[S. F. No. 16236.   In Bank.—August 18, 1939.]

LENA GENOLA, Appellant, v. ARTHUR A. BARNETT et al., Respondents.

Ingemar E. Hoberg and George J. Zech for Appellant.

Hadsell, Sweet, Ingalls & Lamb for Respondents.

PULLEN, J., *pro tem.*—This is an action for personal injuries to plaintiff who was struck, as she was attempting to cross a street between the intersections in a residential district in San Francisco, by a car owned by defendant Arthur A. Barnett and operated at the time by his wife.

At the close of plaintiff's case, a nonsuit was granted on the ground that, as a matter of law, defendant, the operator of the car, was not guilty of negligence, and that plaintiff was guilty of contributory negligence. From this order for nonsuit and the judgment entered thereon this appeal was taken.

Reviewing the evidence in the light of the well-known principles governing nonsuit, the record discloses that, about 6 o'clock in the evening of February 3, 1938, the weather being clear and the street well lighted, plaintiff, a woman

about sixty-two years of age, left her apartment on the north side of Pacific Avenue between Franklin and Gough Streets, and walked west on Pacific Avenue approximately thirty feet to a point almost directly opposite a store on the south side of the avenue toward which she was making her way. She stepped off the curb, and proceeded about eight or nine feet into the street, looking easterly toward Franklin, stopped, took a step back, and was struck by the car driven by Mrs. Barnett, causing the injuries here complained of. Mrs. Barnett, just prior to the accident, was traveling west on Pacific Avenue. She had stopped for a traffic signal at Franklin and Pacific, and was proceeding between thirty and forty miles an hour along Pacific when she struck plaintiff.

Three eye-witnesses testified for plaintiff. Two were employees in the store, and the third was sitting at an upper window of his apartment on the south side of Pacific Avenue, and perhaps seventy-five feet east of the store. One of these witnesses testified he saw plaintiff leave her apartment and walk westerly on the sidewalk to a point opposite the store. He saw her glance first to the west and then quickly to the east as she stepped off the curbing. She continued to look easterly, or toward her left, and when she reached a point eight or nine feet from the curb she stopped, stood still, and then took a step about a foot and a half backward. As plaintiff was in the act of stepping back, the witness looked toward the east and saw defendant's car about forty or fifty feet away traveling toward plaintiff at a rate of between thirty and forty miles an hour. The car of defendant did not swerve, but proceeded in a straight course and, after striking plaintiff, came to a stop about sixty feet from the point of impact. This witness also testified that there was no other traffic on the street, that the street was well lighted, and that immediately after the accident he heard defendant state that she was at fault.

A second witness testified that there were no parked cars along the curb immediately to the left, or east, of plaintiff where she left the curb; that plaintiff stopped at the curb before stepping off, and when about eight feet into the street stopped again. No cars were previously within view of this witness, but at that instant the witness saw the car of defendant approaching from the east about sixty or eighty

feet from plaintiff, traveling between thirty-five and forty miles an hour.

The third eye-witness testified that after the impact plaintiff was lying in the street about eight feet from the curb; that there were no parked cars where plaintiff left the curb, and that the car of defendant traveled about forty feet after striking plaintiff, and came to a stop.

The foregoing is a brief narration of the facts as revealed by the record. The question for determination is whether or not these facts justified the granting of the nonsuit. The accident, as already noted, occurred in a residential zone in San Francisco where the legal rate of speed for an automobile is not in excess of twenty-five miles an hour. ■ At the intersection of Pacific Avenue and Franklin Street the traffic on Pacific Avenue was controlled by a traffic signal device; but at the next intersection, that is, at Gough and Pacific, there was no such traffic control. This is important in the light of section 563 of the California Vehicle Code, which provides: ''Pedestrians at Controlled Intersections. (a) At intersections where traffic is controlled by a traffic control signal device or by police officers, pedestrians shall not cross the roadway against a red or stop signal. (b) Between adjacent intersections so controlled pedestrians shall not cross at any place except in a crosswalk.''

The general provision governing the crossing of a street at a point other than at an intersection or crosswalk is found in section 562 of the Vehicle Code, which provides: ''Crossing at Other Than Crosswalks. (a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. (b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.'' The first thing to be noticed in this section is that it is not a prohibition against crossing a roadway other than at an intersection, but only that the pedestrian shall yield the right of way.

The city of San Francisco has enacted no ordinance covering this subject applicable to residential districts, and this case must be governed by the general law as found in the Vehicle Code. ■ What is there meant by yielding the right of way is discussed in *Mitrovich* v. *Graves,* 25 Cal. App.

(2d) 649 [78 Pac. (2d) 227], which holds that a pedestrian who ventures upon the highway need not flee at the sight of an approaching vehicle, but must merely defer to the driver of the vehicle and permit the machine to pass ahead of him.

In the instant case, it would seem that plaintiff did everything required of her to be done. Before venturing into the street, she stopped and looked in the direction from which traffic would come. She stopped to permit the car of defendant to pass, thereby complying with the rule expressed in *Mitrovich* v. *Graves, supra*. In fact, she did even more—she not only stopped, but took at least one step backward.

Pacific Avenue between the blocks in question was thirty-eight feet nine inches from curb to curb. There was therefore approximately eleven feet of unobstructed highway between plaintiff and the center line thereof over which defendant could have traveled to have avoided striking plaintiff.

Whether this accident was due to the speed at which defendant was driving, the visibility, or failure to observe plaintiff upon the highway, were matters which should have been considered by a jury.

In support of this judgment considerable reliance seems to have been placed upon the case of *Chase* v. *Thomas,* 7 Cal. App. (2d) 440 [46 Pac. (2d) 200]. The distinguishing fact in that case, however, is clearly pointed out in *Mitrovich* v. *Graves, supra,* where it is said (25 Cal. App. (2d) at page 655): "In that case the plaintiff did not yield the right of way. He failed to stop for an approaching machine to pass ahead of him. He deliberately continued on his way and stepped into the very pathway of the machine, without warning. The driver was powerless to stop and avoid the collision."

Another case urged as controlling was that of *Meincke* v. *Oakland Garage,* 11 Cal. (2d) 255 [79 Pac. (2d) 91]. There, plaintiff was governed by an ordinance which contained a positive prohibition against a pedestrian crossing at the point involved. As previously noted, there is here no other prohibition than that found in the Vehicle Code.

Several of the cases relied upon by the respondents are considered in the case of *Brannock* v. *Bromley,* 30 Cal. App. (2d) 516 [86 Pac. (2d) 1062], and we need not here repeat what is there said beyond restating that "The duty of a

pedestrian to 'yield' the right of way while crossing a street other than at a regular crosswalk, as imposed by section 562 of the Vehicle Code, may call for a higher degree of care upon the part of such pedestrian than would be applied to one crossing at a regular crosswalk, but the question as to whether or not such care was exercised in a given case is one for the jury, unless he is so careless that it can be said he is negligent as a matter of law."

In *Varner* v. *Skov*, 20 Cal. App. (2d) 232 [67 Pac. (2d) 123], the deceased was crossing a county roadway where there were no designated crosswalks. She hesitated at the curb, then stepped into the street. Defendant swerved to the left to avoid the accident, but failed. Defendant, appealing from a judgment against him, claimed the trial court erred in refusing to hold as a matter of law that he was not guilty of negligence, but it was held that section 131½ of the Vehicle Code, now section 562, did not give the driver of the car an absolute right of way without regard to the surrounding circumstances, and whether a reasonably prudent person would have crossed at the particular time and place depended upon a number of things, such as the distance and speed of the approaching car, and was a question for a jury.

In *White* v. *Davis*, 103 Cal. App. 531 [284 Pac. 1086], it is said (p. 542): "There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

It is to be recalled also that at the time of the accident respondent was exceeding the speed limit and, while a speed in excess of the limit set forth in the code does not constitute negligence *per se*, the jury was entitled to say whether or not the speed of defendant was, under all the

circumstances, a negligent rate of speed. This rule is stated in Cal. Jur. Supp. 2, Automobiles, at page 406, as follows: "Although the statute requires the pedestrian, in crossing a roadway at a point other than a crosswalk, to yield the right of way to an oncoming vehicle, nevertheless, a recovery is sustainable where it appears that the defendant's vehicle was being operated at excessive speed. The requirement, so it is expressed, does not relieve the driver of the statutory obligation of operating his vehicle at a speed which is 'careful and prudent' and not such as to endanger 'life, limb or property.' "

Not only did the trial court hold in the case at bar, as a matter of law, that plaintiff was contributorily negligent, but that her negligence was, *per se,* the proximate cause of her injury. Here, plaintiff was standing in the street, according to one eye-witness, about ten or twelve seconds. She then stepped back, at which time the car was not within an approximate eighty-foot range of vision of the witness. When defendant failed to see what was plainly visible, failed to slacken her speed, and failed to swerve her car a few inches to avoid striking plaintiff who had yielded the right of way, it cannot be said that, as a matter of law, the negligence of plaintiff was the proximate cause of her injury. (*Griffiths* v. *Crawford,* 10 Cal. App. (2d) 543 [52 Pac. (2d) 548] ; *Arnaz* v. *Forbes,* 51 Cal. App. 665 [197 Pac. 364].)

One of the results of the injury suffered by plaintiff, as is often the case in a head injury, was the inability to recall any of the events immediately before or after the accident, and she was, therefore, unable to testify. Under these circumstances, plaintiff claims she can rely upon the presumption that she was using due care. Inasmuch, however, as the direct evidence is sufficient to justify the submission of this cause to a jury, we need not now pass upon this question. And for the same reason it is likewise unnecessary to consider the doctrine of last clear chance.

Without further elaboration, we believe the trial court here erred, and the order and judgment must be reversed. It is so ordered.

Edmonds, J., Shenk, J., Curtis, J., and Houser, J., concurred.