[Civ. No. 9380. Third Dist. Dec. 2, 1958.]

LEE WARD, Appellant, v. SUN GARDEN PACKING COMPANY, INC. (a Corporation) et al., Respondents.

Charles A. James for Appellant.

Honey, Mayall & Hurley for Respondents.

SCHOTTKY, J.—Plaintiff commenced an action against defendants to recover damages for injuries sustained by him when he was struck by a pickup truck owned by defendant Sun Garden Packing Company, which at the time of the accident was being driven by its employee, defendant Julius Sardo Seica. Defendants filed an answer denying any negligence on their part and also setting up the defense of contributory negligence. The case was tried by a jury, and the jury returned a verdict in favor of defendants. Plaintiff's motion for a new trial was denied, and he has appealed from the judgment and from the order denying his motion for a new trial.

The accident occurred where Marengo Road, which is an east-west highway, and Charter Road meet. Charter Road joins the highway at about a 60-degree angle but does not bisect it. There is no sidewalk along the south side of Charter Way at this point, but there is a dirt path. At the outset of the trial a map was introduced in evidence which, it was stipulated, was an accurate representation of the intersection where the accident occurred. A facsimile of this map is shown below.*

On the north side of the intersection, roughly in the center

*See map on following page.

of Charter Way, are two islands. One a small island, called Island "A" hereafter, is paved and is provided with benches. It is a bus stop. There are no marked crosswalks in the area. Mr. Ward left his home between 6 and 6:30 p. m. on the

evening of January 5, 1956. He was wearing dark clothes. It had been raining during the day. The streets were wet. He walked from his home to the south side of Marengo Road where he turned east and proceeded along it until he reached a point opposite Island "A." He turned to his left and proceeded to cross the highway to Island "A" to catch a bus so he could go to the wrestling matches in Stockton. At this point the highway had four lanes, two in either direction, with concrete strips dividing the opposing lanes. Before he started to cross he observed the lights of a car coming from the east, but he thought that he had plenty of time to cross. Somewhere near the center line, 3 or 4 feet north of it, he was struck. According to appellant's testimony he left the south side of Charter Way at the point indicated on the map as $W^2$ and continued across Charter Way along a line toward Island "A," passing through the concrete strip to the point marked $W^5$, and then from $W^5$ into the west bound lane of Charter Way until he was struck by the pickup.

Seica was driving toward his home in a pickup truck at a speed of 30 to 35 miles an hour. He testified there was no obstruction at the intersection to interfere with his vision, which was about two blocks. He stated thtat he first saw Ward when he was about 30 feet in front of the truck. He saw Ward take about two steps before he was struck.

The exact spot of the impact could not be determined. A highway patrol officer, who investigated the accident, stated Ward was lying some 43 feet west of the southwest corner of Island "A" in the northernmost lane. It was believed the point of impact was some 20 feet southwest of Island "A" in the inner westbound lane. The officer observed some skid marks which measured some 54 feet for the right rear wheel of the truck and some 86 feet for the left. The direction of the skid marks indicates that the truck had turned slightly at a point farther west of the general area of impact.

Appellant bases his appeal upon his contentions that certain erroneous instructions were given by the court and also that the court erred in not giving certain other instructions offered by him.

■ Appellant's first contention concerns the following instruction:

"Since it appears that at the time and place of the happening of the accident in question there was no marked crosswalk or unmarked crosswalk at the intersection of Charter Way and Marengo Road, the question of right of way between a

pedestrian and a vehicle is covered by Section 562 of the Vehicle Code of California, which provides as follows: '*Crossing at other than Crosswalks.* (a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. (b) The provisions of this section shall not relieve the driver of the vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.' "

Appellant contends the above language was erroneous because the trial court made a determination as a matter of law that no unmarked crosswalk existed at the intersection. A crosswalk is defined by section 85 of the California Vehicle Code as either: "(a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street. (b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

We think it is clear from the evidence and from the map that the accident did not happen within an unmarked crosswalk. The intersecting streets in the instant case do not meet at approximately right angles, and the intersection does not fall within the provisions of section 85, subdivision (a) of the Vehicle Code. (*Weissman* v. *Seehusen,* 55 Cal.App.2d 391 [131 P.2d 10].) It would be most unusual for a crosswalk to go almost diagonally across an intersection through concrete dividing strips to a triangular island in the middle of the street. In view of the provisions of the Vehicle Code and of the evidence in the instant case, a finding that there was an unmarked crosswalk at the place of the accident could not have been sustained; and there was, therefore, no error in the instruction that there was no unmarked crosswalk.

Appellant also contends that the court erred in not instructing the jury on the provisions of section 560, subdivision (a) of the Vehicle Code relating to the duty of a driver to yield the right of way to a pedestrian in a crosswalk. If there was no unmarked crosswalk as a matter of law, then the motorist was not under a legal duty to yield the right of way to the pedestrian under the provisions of section 560(a). In this regard appellant claims that the error in refusing to give the foregoing instruction was compounded because the court instructed that every pedestrian crossing a roadway at

any point other than within a marked crosswalk or within an unmarked crosswalk shall yield the right of way to all vehicles upon the roadway. (Vehicle Code, § 562, subd. (a); § 562, subd. (b) was also given.) The trial court did not err in refusing to give the requested instruction, for if there was an unmarked crosswalk as a matter of law there would be no reason to give the instruction.

■ Appellant next attacks the propriety of the instruction given by the court on contributory negligence. The correctness of the instruction is not questioned. This contention cannot be sustained because as stated in *Genola* v. *Barnett*, 14 Cal. 2d 217, 222 [93 P.2d 109], citing *White* v. *Davis*, 103 Cal.App. 531 [284 P. 1086]: ". . . Where he [a pedestrian] looks but does not see an approaching automobile, or seeing one, misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury." We think that the instant case is clearly one in which the issue of contributory negligence on the part of appellant was a proper issue to be submitted to the jury.

■ Appellant's final contention is that the court erred in the instruction it gave on last clear chance. Said instruction reads as follows:

"Now there has been some discussion of a rule of law known as the Doctrine of Last Clear Chance.

In an introductory way, this may be said of it: When the facts of a case are such as to invoke the doctrine, its effect is to place liability on the person who had the last clear chance to avoid an accident and who did not do so. To be more specific:

"The doctrine of Last Clear Chance may be invoked if, and only if you find from the evidence,

"(1) That the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger;

"(2) That defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care, should have known, that plaintiff was unable to escape therefrom; and

"(3) That thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but

failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions that law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff.

"*You are admonished however, that if the doctrine is to be applied and a recovery permitted, despite the contributory negligence of the injured party, there must be substantial evidence to show that the defendant had a last clear chance to avoid the accident by the use of ordinary care following the time that the injured party had lost any similar opportunity to avoid the accident by the use of such care.* (Emphasis added.)

"It is only under the circumstances set forth in the instructions just given that the injured person's contributory negligence would not bar a recovery."

The italicized portion of the instruction was added by the court to the statement of the doctrine of last clear chance as restated by the Supreme Court in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 [306 P.2d 432].

Appellant concedes that the language of the instruction as given is a correct statement of the law, but contends that the portion added by the court is erroneous because it unduly emphasized one element of the last clear chance doctrine and suggested to the lay mind that a different degree of proof is required of plaintiff to sustain the application by the jury of the doctrine to the facts. Appellant argues that the instruction was misleading and confusing to the jury and also that it required the jury to determine a question of law.

We do not believe that the court erred in adding the language complained of. Rather we are of the opinion that in view of the very slight evidence upon which the application of the doctrine of last clear chance could be based in the instant case it was entirely proper for the court to add the language complained of. Indeed in the Brandelius case, *supra,* the Supreme Court said at page 738: ". . . In other words, if the doctrine is to be applied and a recovery is to be permitted despite the contributory negligence of the injured party, there must be substantial evidence to show that the defendant had a last clear chance to avoid the accident by the

use of ordinary care following the time that the injured party had lost any similar opportunity to avoid the accident by the use of such care. . . ." And as stated in the *Estate of Bryson,* 191 Cal. 521, at page 541 [217 P. 525] : ". . . To justify the submission of any question of fact to a court or jury there must be proof of a substantial character that the fact is as alleged. . . ."

No other points raised require discussion.

The judgment and order are affirmed.

Peek, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.