[Civ. No. 27853. Second Dist., Div. Three. Aug. 16, 1965.]

DANIEL BOVE et al., Plaintiffs and Respondents, v. RONALD LEE BECKMAN et al., Defendants and Appellants.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendants and Appellants.

Magana & Olney, Robert M. Kaufman, Daniel C. Cathcart and Ellis J. Horvitz for Plaintiffs and Respondents.

ASHBURN, J.*—Daniel Bove brought this action for wrongful death of his wife Maureen. At pretrial it appeared that Mr. and Mrs. Carlson were surviving parents of decedent and the court ordered that they be added as plaintiffs.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Judgment was rendered after a nonjury trial in favor of the three plaintiffs in the sum of $9,937.45 against Ronald Lee Beckman, the driver of the automobile which struck and killed Mrs. Bove, and against the owner Earl Beckman in the sum of $5,000. Defendants have appealed.

In this court their counsel rely principally upon the argument that decedent was contributorily negligent and that the presumption of exercise of due care on her part was overthrown by evidence of plaintiffs' own witnesses which established as matter of law such negligence on decedent's part.

■ Concededly the fact that Mrs. Bove was killed in the accident raises a disputable presumption that she was exercising due care at the moment of the accident and immediately preceding the same. "The conduct of one who is killed in an accident involved in a lawsuit is clothed with the presumption of the exercise of due care. Whatever acts should be done or omitted in the exercise of ordinary care are presumed to have been done or omitted by the decedent. ■ This presumption is evidence which of itself is enough to carry plaintiff's case past a nonsuit unless it is dispelled by evidence produced in plaintiff's behalf. (Citations.) ■ The presumption cannot be overcome by evidence of the adverse party elicited under section 2055, Code of Civil Procedure. (Citations.)" (*Orbach* v. *Zern,* 138 Cal.App.2d 178, 181 [291 P.2d 120]. See also 7 Cal.Jur.2d section 402, at pages 324-325.)

■ This presumption is not dispelled by evidence produced by the opposing party standing alone or by that of plaintiffs' witnesses unless their testimony is wholly irreconcilable with the presumption and not the product of mistake or inadvertence. *Gigliotti* v. *Nunes,* 45 Cal.2d 85, 92-93 [286 P.2d 809] : "As expressed in *Scott* v. *Burke* (1952) 39 Cal.2d 388, 394 [247 P.2d 313], it is settled law that where alleged negligent acts and conduct of a decedent are at issue before the court and the 'testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, . . . an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is . . . proper' except that if the fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.'

. . . [T]he rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testify fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' ''

On July 9, 1960, a party of four young people consisting of plaintiff Dan Bove (20 years of age), his wife Maureen, Terry Webb and Sharon Dascenzi (who had become Mrs. Sharon Beamer before the trial) were bent upon watching or participating in a run of grunion which was expected in the Huntington Beach area. In a car owned and driven by Terry Webb (then 17 years old) they arrived at Huntington Beach from the north[1] (Buena Park) and turned right or west on Pacific Coast Highway, drove about one to one and a half miles toward Long Beach and parked on the shoulder on the north side of the highway which was in that vicinity straight, level and dry. The night was dark but clear; the time about 10:15 p.m. Many cars were parked on the south side of the highway and some on the north. There was no artificial illumination in the area. The highway was divided into four lanes, with double white line in the middle and broken white line between northerly or west bound lanes, the one adjoining the double line being designated on diagram used at the trial as W-1 or No. 1, and the one immediately adjoining it on the north as W-2 or No. 2; north of this last mentioned lane was a shoulder (width of lane and shoulder being 28 feet); there was no white line separating the lane from the shoulder but the division was plainly apparent to the eye.

There were many people on the beach. Terry Webb parked on the north shoulder and all four occupants alighted on its north side, walked behind the car and started to cross the highway to the beach, not in a crosswalk. As they did so they were in a sort of line parallel to the highway; on the left was Dan Bove, then came Terry Webb, but the women were a

---

[1] In that area the coastline runs from southeast to northwest and the highway roughly parallels it. For convenience counsel at the trial treated the highway as running east and west, with the ocean on the south and the oil wells on the north. We follow this expedient of convenience.

little behind the men and to their right with Sharon next to Webb and Mrs. Bove to the right of Sharon. As they came to lane W-2 Bove looked to the right and could barely make out the lights of an east bound car, about a fourth to half a mile away; he then looked left and saw only one car, which was in lane 1 and two or three blocks away. The party stepped a few feet into lane W-2, then moved backward when Bove saw a west bound car which was making an abrupt lane change from lane 1 to lane 2 about two and a half blocks away; another west bound car, the one first seen by Bove, was ahead of the one changing lanes. When Bove saw this he told Terry to stop and put his hand in front of him, whereupon all four persons stepped backward 2 or 3 feet placing them again at the shoulder. In about two or three seconds the auto which had turned into lane 2 passed them travelling at about 65 to 70 miles an hour. It had passed the other car. While the Bove party stood there the women who were still behind and to the east of the men, could be heard talking. As the car in lane 2 (which proved to be defendant's) passed them Bove heard a sound like a tire blowing out. That car pulled over and stopped at the north curb. Sharon said "Where is Maureen at?" The husband then suspected she had been struck and ran toward the car; he could not immediately see her lying in the street some 200 feet away; the auto was a little ahead of her. Mr. Bove said at the trial that his wife was lying entirely in lane W-2. From the time they alighted from the Webb auto until he saw his wife lying in the street he had not seen her though he had heard her voice.

Defendant Ronald Lee Beckman testified that he was driving at "speed limit," 65 miles an hour with his headlights on "low beam." Vehicle Code section 24407 (formerly section 648), dealing with headlight equipment says in subdivision (a) that the uppermost distribution of light shall be such as to reveal persons and vehicles at least 350 feet ahead, and in subdivision (b): "There shall be a lowermost distribution of light, or composite beam so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead. On a straight level road under any condition of loading none of the high intensity portion of the beam shall be directed to strike the eyes of an approaching driver." Accordingly defendant's lights were so designed as to reveal persons at least 100 feet ahead and so adjusted that none of the high intensity portion of the beam should be directed to strike the eyes of an approaching driver. This last

clause refers to the approximate height of the eyes of a normal person standing on the ground.

It appears from the testimony of Terry Webb that he saw no west bound car except the one in lane W-1. Mrs. Beamer said that before she started the second time to cross the highway she looked to her left and saw no cars coming until she saw a car in lane 2 "maybe four feet" from her; it passed quite close to her, about 2 or 3 feet away: "I stepped back, and then I felt kind of relieved that I just missed it. . . ." So far as appears none of that party except Bove saw the defendant's car approaching and the low beam suggests the reason.

■ It is a fair assumption (in aid of the presumption of due care) that Maureen Bove looked first to her left, the direction from which danger was to be apprehended and, being partially behind the two men and probably of shorter stature, and because of the low beam of the approaching car's lights, saw no vehicle coming, looked then to the right and, seeing no danger approaching, stepped into lane W-2 and was immediately struck by defendant's car travelling at high speed in that lane and with lights on low beam. It cannot be inferred that those lights would disclose decedent at a distance of more than 100 feet or that she necessarily should have seen the car at a greater distance. Traveling 95 feet per second (when going 65 miles an hour) the defendant's car approached and passed so close and fast that Mr. Bove, standing 2 or 3 feet away from it, heard a sound like the blowout of a tire as the car passed. Mrs. Beamer said substantially the same thing. Terry Webb said that before the accident he saw no car in any lane other than lane 1; that he heard the sound like a tire blowout, did not see the car but felt its breeze as it passed him. The presumption is that decedent did whatever a careful person would have done in her situation and the acts above suggested are embraced within the presumption. (*Orbach* v. *Zern, supra,* 138 Cal.App.2d 178, 181-182; *Wiswell* v. *Shinners,* 47 Cal.App.2d 156, 160 [117 P.2d 677].)

In the group of plaintiffs' witnesses there was no one who saw Mrs. Bove from the time they started across the highway the second time and the moment when they saw her lying on the ground unconscious. Defendant Beckman testified that he did not see decedent until a face appeared in the windshield; that he heard a thump simultaneously; she seemed to ride on

his car; "a slight riding," not "very long"; "it may have been just an instant or it may have been longer"; the face disappeared and he thought he was running over decedent. None of this is inconsistent with the presumption of decedent's due care.

■ The defense relied upon two theories of indisputable negligence on Mrs. Bove's part. It is said that this accident occurred between intersections in a 65 mile speed zone and that decedent as a pedestrian was obliged to yield the right of way to the automobile, relying upon section 21954 Vehicle Code (formerly section 562) which says: "(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. (b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway." The argument seems to overlook the provisions of subdivision (b) just quoted. It also disregards such decisions as *Jacoby* v. *Johnson*, 84 Cal.App.2d 271, 274-275 [190 P.2d 243], wherein it is said: "Subdivision (a) of section 562 of the Vehicle Code requires that every pedestrian crossing a roadway at a point other than that marked with a crosswalk or within an unmarked crosswalk at an intersection, shall yield the right of way to vehicles. This provision is qualified, however, by subdivision (b) of the same section, to the effect that the requirement of subdivision (a) 'shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.' ■ . . . Although a pedestrian in crossing a roadway at a point other than a crosswalk is required to yield the right of way to an oncoming vehicle, he nevertheless may recover damages if injured while the vehicle is being operated at an excessive speed. (*Genola* v. *Barnett*, 14 Cal.2d 217, 223 [93 P.2d 109].)" To same effect see *Douglas* v. *Hoff*, 82 Cal.App.2d 82, 87 [185 P.2d 607]; *Genola* v. *Barnett*, 14 Cal.2d 217, 223 [93 P.2d 109]; *Biggar* v. *Carney*, 181 Cal.App.2d 22, 28 [5 Cal.Rptr. 94].

■ When it is recalled that defendant was traveling 65 miles an hour, the statutory limit (according to his own testimony), or 70 miles as Mr. Bove saw it, add that his lights were on low beam all the way and afforded a forward vision of only about 100 feet, which would be covered in one second, there seems to be no escape from the conclusion that he was

driving at a negligent and excessive speed which was inconsistent with any right of way that he might otherwise have had.

 *Wooldridge* v. *Mounts,* 199 Cal.App.2d 620, 624-625 [18 Cal.Rptr. 806]: "The applicable section of the Vehicle Code, section 21954 (formerly Veh. Code, § 562), requires 'Every pedestrian crossing a roadway at any point other than within a marked crosswalk . . . shall yield the right-of-way to all vehicles upon the roadway.' It does not follow from this section, however, that every pedestrian who gets hit by a vehicle while failing to yield the right-of-way is guilty of contributory negligence as a matter of law. . . . In *Francis* v. *City & County of San Francisco,* 44 Cal.2d 335 [282 P.2d 496], wherein a judgment for the defendant was reversed, it is said, at pages 339-340: " 'It is usually a question for the jury and not for the court whether a pedestrian has used due care in crossing the street and in making the decision that he can cross with safety. There is no rule of law that irrespective of existing circumstances a pedestrian must look 'continuously' or be arbitrarily adjudged guilty of contributory negligence. [Citing cases.] Neither the pedestrian nor the driver of an automobile has a superior right to the use of the street. (*Burgesser* v. *Bullocks,* 190 Cal. 673, 675 [214 P. 649].) Each must exercise the care required of a reasonable and prudent person under the existing circumstances. Even where a right of way is given by statute, if conditions so require it to avoid injury to others, the right of way must be yielded. No general rule may be laid down which will fit all circumstances as to the duty of care required of a pedestrian in crossing a street.' " (See also *Francis* v. *City & County of San Francisco,* 44 Cal.2d 335, 339 [282 P.2d 496]; *Jones* v. *Wray,* 169 Cal.App.2d 372, 378-382 [337 P.2d 226].) We do not consider authorities cited by appellants to be to the contrary of the view we have just expressed; mainly they are distinguishable upon their facts.

 A mere mistake of a pedestrian who looks as required and makes an error in appraising the situation does not convict him or her of negligence. "Whether a mistake in judgment by a pedestrian when crossing a street, as to the speed and danger of an approaching vehicle constitutes contributory negligence is a question for the jury. (*Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 839 [161 P.2d 673, 164 A.L.R. 1].) " (*Rios* v. *Bennett,* 88 Cal.App.2d 919, 922-923 [200 P.2d 73].)

Appellants' other major contention is that the accident occurred in lane W-1, not in W-2; that defendant left Huntington Beach in lane W-2 but soon switched to W-1 to pass another car that was travelling in W-2; that he did pass it on his right, and struck decedent when she was in lane W-1.

 This merely raises a conflict in the evidence and renders applicable the rule that ''The acceptance or refusal to accept an inference reasonably deducible from the evidence, or the acceptance of one of several conflicting inferences reasonably deducible therefrom, is a function committed to the discretion of the trier of fact and may not be determined as a matter of law.'' (*Hixson* v. *International Harvester Co.*, 219 Cal.App.2d 88, 93 [32 Cal.Rptr. 905].) In other words, evidence conflicting with the presumption of due care is to be weighed with the presumption (itself evidence) and all other proofs supporting it (*Scott* v. *Burke,* 39 Cal.2d 388, 399 [247 P.2d 313] ; *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 221 [331 P.2d 617] ; *Kastner* v. *Los Angeles Metropolitan Transit Authority,* (63 Cal.2d 52, 59 [45 Cal.Rptr. 129, 403 P.2d 385]), and the presumption is not dispelled by testimony produced by the opposing party. 7 Cal.Jur.2d section 402, at pages 325, 326: ''But the defendant's contradictory evidence of itself, without evidence introduced by the plaintiff, is not sufficient to overcome the presumption as a matter of law so as to entitle him to a directed verdict. Notwithstanding such contradictory evidence, the disputed fact as to the decedent's contributory negligence remains for determination as a question of fact upon all the evidence, including the presumption.'' (See also *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 553 [299 P. 529] ; *Bradner* v. *Vasquez,* 43 Cal.2d 147, 153 [272 P.2d 11] ; *Berger* v. *Limon,* 214 Cal. App.2d 149, 151 [29 Cal.Rptr. 483].)

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied September 3, 1965, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1965.