[Civ. No. 12768. Third Dist. June 4, 1971.]

MARY E. LACY, Plaintiff and Respondent, v.
CALIFORNIA UNEMPLOYMENT INSURANCE
APPEALS BOARD et al., Defendants and Appellants.

## COUNSEL

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Harold B. Haas, Assistant Attorney General, William J. Power and William L. Shaw, Deputy Attorneys General, Dahl, Hefner, Stark & Marois, Theodore M. Marois, Jr., and Dwight A. Carlson for Defendants and Appellants.

Colley & McGhee, Nathaniel S. Colley and Milton L. McGhee for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, J.**—The Unemployment Insurance Appeals Board sustained the decision of a referee who held that petitioner Mary E. Lacy was disqualified for unemployment insurance benefits because she had been discharged from her last employment for misconduct. Section 1256, Unemployment Insurance Code, disqualifies an individual who has been discharged for misconduct connected with his most recent work.[1] Mrs. Lacy

---

[1] Unemployment Insurance Code section 1256 provides: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work.

"An individual is presumed to have been discharged for reasons other than misconduct in connection with his work and not to have voluntarily left his work without good cause unless his employer has given written notice to the contrary to the director within five days after the termination of service, setting forth facts sufficient to overcome the presumption. If the employer files such notice, the question shall immediately be determined in the same manner as benefit claims.

"An individual whose employment is terminated under the compulsory retirement

brought a mandate proceeding in the superior court. That court reviewed the transcript of testimony at the hearing and ordered the board to vacate its decision and award benefits. The board and the employer appeal.

In this case the administrative agency and the superior court viewed a single body of evidence—the testimony taken at the referee's hearing—and indulged in dissident findings. The agency found that Mrs. Lacy had been demoted by her employer, who then instructed her to train the man who was her replacement and new superior; that the instruction was reasonable and she was guilty of misconduct in refusing to comply. The superior court judge viewed the identical evidence, found that the employee's refusal to comply was reasonable and absolved her from the charge of misconduct.

■ In reviewing decisions granting or denying unemployment insurance benefits, the superior court exercises its independent judgment on the evidence and inquires whether the administrative agency's findings are supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subds. (b) and (c); *Thomas* v. *California Emp. Stab. Com.,* 39 Cal.2d 501, 504 [247 P.2d 561].) Except where relevant evidence has been excluded at the administrative hearing or could not be produced by the exercise of reasonable diligence, the superior court's independent review focuses on the evidentiary record made at the administrative level. (Code Civ. Proc., § 1094.5, subds. (a) and (d).)

In the absence of other specifications, Labor Code section 2856 establishes the extent of an employee's duty to comply with his employer's instructions: "An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee."

Another criterion is supplied by a decisional elaboration of the term "misconduct" as used in unemployment insurance legislation. ■ In *Maywood Glass Co.* v. *Stewart,* 170 Cal.App.2d 719, 724 [339 P.2d 947], the court adopted a definition originally formulated by the Supreme Court of Wisconsin, equating misconduct with "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, . . . [but not] mere inefficiency, unsatisfactory conduct . . . inadvertencies or ordinary negligence . . . ."

provisions of a collective bargaining agreement to which the employer is a party, shall not be deemed to have left his work without good cause."

There was no conflict in the evidence taken at the administrative hearing. It was sparse, incomplete, vulnerable to incompatible interpretations, but not in conflict. For about five years Mrs. Lacy had held the position of executive housekeeper at American River Hospital. In April 1969 her superior, Mr. Enyeart, informed her that the hospital's growth had enlarged the job requirements beyond her capacity and that Mr. Earl Chew would replace her. He asked whether she would be willing to work as day shift supervisor under the direction of Mr. Chew. At Mrs. Lacy's request Mr. Enyeart gave her a list of her new duties, one of which was to train new employees. According to her testimony, he then ordered her to "train" Mr. Chew, her new superior, in the duties of the position from which she had just been demoted. She refused to "train" her new superior and was discharged.

Neither the employer nor the unemployment insurance agency produced testimony to refute Mrs. Lacy. Mr. Chew was the only other witness at the hearing. On the witness stand he observed that her reluctance to train him was a "misunderstanding on her part." He did not deny that she had been instructed to train him. Neither he nor Mrs. Lacy supplied any clue to the parties' understanding of the instruction to train him.

■ The trial court expressly found that the disobeyed instruction imposed a "new" burden on the employee within the meaning of Labor Code section 2856. That finding does not satisfy the statute, which permits disobedience only when the burden is both "new and unreasonable." The trial court did find that the employee's refusal to comply was reasonable and concluded that she had not violated the Labor Code provision. Thus one may fairly imply a finding by the trial court that the employer's instruction imposed a burden which was both new and unreasonable. Moreover, the court concluded that Mrs. Lacy had not been guilty of misconduct, thus impliedly finding that she had not been guilty of "willful or wanton disregard" of her employer's interests within the meaning of the formulation in the *Maywood Glass* case, *supra*.

The evidentiary record discloses neither the employer's nor the employee's conception of the order to "train" Mr. Chew, the new successor and superior. The training might have amounted to an extensive and intensive indoctrination in the principles and techniques of management and personnel administration. On the other hand, it might have amounted to no more than a transmission of routine informational details, such as the location of the key to the linen room. The employer's order was thus shrouded in utter subjectivity. The hearing record similarly concealed the employee's emotional reaction. She might have justly resented her ouster by one of inferior qualifications or might have rejected the order through

injured vanity. Whatever the communicated or uncommunicated meaning of the employer's instruction, the administrative agency characterized it as reasonable, the superior court as unreasonable. ■ The appellants now ask the appellate court to superimpose its own—and supposedly more authoritative—characterization upon the cryptically described conduct.

The request assumes a scope of appellate review-broader than a California appellate court possesses. While the superior court exercises its independent judgment on the administrative evidence, California law accords the appellate court a much narrower scope of review, confining it to an inquiry whether the superior court's findings are supported by substantial evidence. (*Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20].) The appellate court's review of the superior court judge's gleanings from the administrative transcript is just as circumscribed as its review of a jury verdict or judge-made finding after a conventional trial. On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court. (*Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].)

True, the scope of appellate review may be dilated by viewing the issue as one of law rather than fact. Many issues might with equal force be classed as questions of law or questions of fact. (2 Am.Jur.2d, Administrative Law, §§ 618-619, pp. 461-466; Brown, *Fact and Law in Judicial Review*, 56 Harv.L.Rev. 899; Jaffe, *Judicial Review: Question of Law*, 69 Harv.L.Rev. 239; Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California*, 29 So.Cal.L.Rev. 434; Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis*, 58 Harv.L.Rev. 70.) ■ In the allocation of adjudicative functions the application of a legal principle or rule to undisputed facts is said to be a question of law for the appellate courts. (*Yakov* v. *Board of Medical Examiners, supra*, 68 Cal.2d at p. 74, fn. 7; see also, *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) That concept supplies an argument for assigning the present issue to the law category. In contrast, instances are legion in which the reviewing court discerns a question of fact, not of law, when opposing inferences may reasonably be drawn from nonconflicting evidence. (E.g., *Primm* v. *Primm*, 46 Cal.2d 690, 694 [299 P.2d 231]; *Bove* v. *Beckman*, 236 Cal. App.2d 555, 564 [46 Cal.Rptr. 164]; *Frankenheimer* v. *Frankenheimer*, 231 Cal.App.2d 101, 107 [41 Cal.Rptr. 636]; see Weiner, *The Civil Nonjury Trial and the Law-Fact Distinction*, 55 Cal.L.Rev. 1020.)

■ Because *Moran* v. *Board of Medical Examiners, supra,* establishes a scope of appellate review in administrative mandamus virtually identical with that in court-tried litigation, we are confined to the boundaries established in court-tried cases involving the very issue presented here, the reasonableness of an employer's order to his employee: " 'Where the reasonableness of the master's order depends upon undisputed facts, and the inferences from the facts found or admitted all point one way, the question as to the reasonableness of the order or rule is one of law for the court and not a question of fact for the jury. Where, however, the reasonableness of the order does not rest wholly upon undisputed facts, or its reasonableness is not so apparent that but one inference can reasonably be deduced from the proved or admitted facts, it is for the jury [in this case, the trial judge as the trier of fact] to determine whether the order is reasonable or not.' " (*Mason* v. *Lyl Productions,* 69 Cal.2d 79, 84 [69 Cal.Rptr. 769, 443 P.2d 193], quoting from *May* v. *New York Motion Picture Corp.,* 45 Cal.App. 396, 404-405 [187 P. 785].)

■ The facts here are undisputed. Yet, if only because they are sparse and ambiguous, they point in no one direction. No one can say as a matter of law that the incompletely described order of Mrs. Lacy's employer was reasonable or unreasonable. One characterization is as permissible as the other. The ambiguous administrative evidence points simultaneously in opposite directions—toward the reasonableness of the employer's order and toward its unreasonableness. The order's characterization as one or the other turns on the internal leanings of the beholder. No matter how objective its cloak, the characterization is found and applied through internal divining rods. It is acceptable if it evokes an agreeable response in the viscera of others and inacceptable if it does not. Reasonableness of the order is "not so apparent that but one inference can reasonably be deduced from the proved or admitted facts. . . ." (*Mason* v. *Lyl Productions, supra,* at p. 84.) In consequence, the issue is one of fact and not of law. Since the trial court's characterization possesses substantial evidentiary support, we may not reinstate that of the administrative agency even though the latter has equal evidentiary support.[2]

[2]Professor Jaffe points out that the real question involved in the administrative application of statutory terms to specific facts is whether the agency's decision harmonizes with statutory purpose. (Jaffe, *op. cit.,* 69 Harv.L.Rev. at p. 261.) In California the quest for statutory purpose in administrative mandamus is successfully blunted by the *Moran* doctrine, which enthrones each superior court judge as the practical arbiter of the facts and restricts appellate courts to a role more appropriate to the review of jury verdicts in automobile collision cases. The inflation of the one-judge superior court's role correspondingly deflates that of the administrative agency at one end of the scale and that of the three-judge and seven-judge appellate

 A subordinate issue is the claim of the unemployment insurance agency that the trial court erred in denying the agency's motion to remand the proceeding to the appeals board for additional evidence. Accompanying the motion were affidavits describing additional evidence on two topics, one, the discovery that a work manual ostensibly prepared by Mrs. Lacy was not really her original composition and, second, testimony that she had not really been asked to train Mr. Chew. The first topic was irrelevant, the second too late. The trial court properly denied the motion. Although the administrative record was skeletal, the attempt to flesh it out was not supported by a showing that either the agency or the employer had exercised reasonable diligence to produce the additional evidence at the referee's hearing.

That kind of showing was a precondition to the requested remand.[3] In conformity with section 1256 of the Unemployment Insurance Code (fn. 1, *supra*), the employer had furnished the Department of Employment (now the Department of Human Resources Development) a notice declaring that Mrs. Lacy had been discharged. The department had then reached an initial determination denying compensation. Mrs. Lacy appealed from the determination and the Unemployment Insurance Appeals Board on May 28, 1969, gave notice of a hearing before the referee on June 9, 1969. The hearing was held on the latter date. The employer supplied evidence at the hearing and the department had an opportunity to do so. Neither the department nor the employer suffered from lack of opportunity for a fair

---

courts at the other. The present *denouement* was predicted in Justice Traynor's dissent in *Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d at pages 319-320:

"The condition in this state of judicial review of the adjudicatory decisions of statewide administrative agencies exercising only statutory powers may be briefly described. Appellate courts disclaim virtually all responsibility when it is claimed that the agency's findings are not supported by the evidence. . . . Whatever the superior court does must be upheld by the appellate courts if, viewing the proceeding not as a judicial review but as a proceeding like a nonsuit or directed verdict, there is some evidence or inferences therefrom in favor of the superior court's decision. . . . When [the superior court] erroneously finds that the weight of the evidence does not support the agency's findings it substitutes its judgment for that of the agency and controls the discretion vested by the Legislature in the agency. . . . Judicial review becomes more than a check on administrative action, it completely supplants that action and destroys 'the values—expertness, specialization and the like—which, as we have seen, were sought in the establishment of administrative agencies.' (Report U. S. Attorney General's Committee on Administrative Procedure, 77.)"

[3]Code of Civil Procedure section 1094.5, subdivision (d), declares: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (e) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case."

hearing. A party desiring to present evidence in opposition to an applicant's appeal should be prepared to produce it on the scheduled hearing date. ■ The hearing and appeals procedure is designed to assure prompt determination of benefit applications. (*California Dept. of Human Resources Development* v. *Java*, 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347] (Apr. 26, 1971.)) ■ The department's effort to reopen the hearing after the proceeding reached the reviewing court was incompatible with that design.

Judgment affirmed.

Pierce, P. J., and Janes, J., concurred.

A petition for a rehearing was denied June 30, 1971, and the petition of appellants board and Sheffield for a hearing by the Supreme Court was denied July 28, 1971.