[Civ. No. 14246. Third Dist. Aug. 13, 1974.]

STEPHANIE AGNONE, Plaintiff and Appellant, v.
SIGURD HANSEN, as Director, etc., et al., Defendants and Respondents.

## COUNSEL

Lawrence L. Curtice, David C. Moon and Katrina Weber for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Edmund E. White, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**PUGLIA, J.**—This appeal is taken from the denial by the superior court of a petition for writ of mandate seeking to compel the Unemployment Insurance Appeals Board ("Board") to grant unemployment compensation benefits to the appellant, Stephanie Agnone (hereinafter "plaintiff"). The issue determinative of this appeal is whether there is substantial evidence in the record to support the findings of the trial court. We hold that there is and will affirm the judgment accordingly.

Plaintiff was employed for 3½ months as a housekeeper at an 18-bed nursing home owned and operated by Deane Stenzel ("employer"). It was plaintiff's responsibility to keep the place clean. Her duties included tasks customarily associated with housekeeping such as dusting, mopping and cleaning sinks and bathrooms. Although plaintiff was under the general supervision of Mrs. Stenzel, any of the nurses, orderlies, or other specialized employees had the authority to direct her to housekeeping tasks that required immediate attention.

On November 1, 1971, Dighero, an orderly, instructed plaintiff to clean a bathroom.[1] Plaintiff testified Dighero had been "riding" her, treating her "like a slave" and ordering her around. He repeatedly told her to clean the bathroom. Plaintiff responded that she knew what was to be done and would get it done when she got around to it. Dighero advised plaintiff that if she did not comply he would report her to Mrs. Stenzel. Plaintiff "just couldn't take it any more." In a loud voice, punctuated by profanity, plaintiff demanded that Dighero never threaten her again. Nothing more was said by Dighero. About five minutes thereafter plaintiff did clean the bathroom.

Mrs. Stenzel was advised of the altercation and discharged plaintiff later that day for neglecting her work and causing dissension.

Mrs. Stenzel testified that if plaintiff's work had been satisfactory, she would have interceded and settled the difficulty between plaintiff and Dighero and plaintiff would still be working as a housekeeper. Since her work was not satisfactory, however, Mrs. Stenzel thought it not worthwhile to continue her employment. Mrs. Stenzel further testified that she had received many complaints from the staff about plaintiff's reluctance

---

[1] It appeared that an emergency existed because one of the patients had an involuntary bowel movement in the bathroom. There was no evidence that plaintiff was told by Dighero that there was an emergency or that she otherwise had knowledge of the circumstances.

to take orders and that she was noisy; that she had observed her reading on duty and sleeping on duty; that she had cautioned her "many times" that she must keep the place clean throughout and had told her on "many occasions" that the work was not being performed to her satisfaction; that she constantly had to tell her what to do; that plaintiff had promised to do better and would, when told, do as she was asked but would shirk her responsibilities when nobody was there to direct her. Mrs. Stenzel added that she kept plaintiff on for over three months because she thought she could train her but as it turned out she was "too self-willed."

Plaintiff testified that she got along well with the patients and the other employees and that she did not neglect her duties. She admitted to reading on duty "a couple of times." She stated she recalled only two occasions when she had been warned about the performance of her work.

■ In reviewing a decision of the board, the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the administrative agency's findings are supported by the weight of the evidence. (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566].) Here the trial court found the discharge of plaintiff proper on the ground of wilful misconduct and further found the decision of the board supported by the preponderance of the evidence. ■ On review of the judgment the appellate court is confined to an inquiry whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence (*Warriner* v. *Unemployment Ins. Appeals Bd.* (1973) 32 Cal.App.3d 353, 358 [108 Cal.Rptr. 153]; *Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* at p. 1134), unless the probative facts are uncontradicted, not susceptible of opposing inferences, and, as a matter of law, compel a different conclusion from that reached by the trial court. (*Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* at p. 1134; *General Motors Corp.* v. *Cal. Unemployment Ins. Appeals Bd.* (1967) 253 Cal.App.2d 540, 545 [61 Cal.Rptr. 483].)

As indicated heretofore, the evidence relative to plaintiff's performance of her duties is conflicting. A resolution of that conflict in favor of the employer is implicit in the trial court's findings and judgment. "On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the [prevailing party] and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its de-

ductions for those of the superior court. [Citation.]" (*Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* at p. 1134.)

The issue thus narrows to whether the conduct for which plaintiff was discharged, as revealed by the evidence and reasonable inferences therefrom most favorable to the employer, amounted to "misconduct" within the meaning of that term as used in section 1256 of the Unemployment Insurance Code.

Section 1256, insofar as applicable, provides: "An individual is disqualified from unemployment compensation benefits if the director finds . . . that he has been discharged for misconduct connected with his most recent work."

"Misconduct" as used in the foregoing provision is limited to " '. . . conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' " (*Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719, 724 [339 P.2d 947], quoting from *Boynton Cab. Co.* v. *Neubeck,* 237 Wis. 249 [296 N.W. 636, 640].)

■ The evidence, viewed in the light most favorable to the employer, discloses that plaintiff, the only housekeeper in an 18-bed nursing home required by law to maintain a very high standard of cleanliness, was responsible for the maintenance of that standard which was capable of being maintained by a single individual working normal 8-hour shifts. In the three and one-half months plaintiff was employed her work was generally unsatisfactory for which she had been admonished on many occasions. Though she had been told constantly what to do she continually shirked the relatively simple tasks of dusting, mopping and cleaning. On the date of her discharge she responded to the reasonable and proper instructions of a fellow employee in a coarse and fractious manner. The staff had previously complained about her reluctance to take orders.

From the foregoing it is reasonably inferable that plaintiff was capable

of performing the tasks assigned to her, and that her failure to do so was due to carelessness and negligence of such degree and recurrence as to manifest wrongful intent and to show an intentional and substantial disregard of the employer's interests and of the plaintiff's duties and obligations to her employer. (*Maywood Glass Co.* v. *Stewart, supra,* 170 Cal.App.2d at p. 724.) It may further be inferred that plaintiff knew or reasonably should have known that such continuing conduct would result in substantial detriment to the interests of the employer.

There being substantial evidence in support of the findings and judgment of the trial court, the judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.