[Civ. No. 38417. First Dist., Div. Two. Oct. 22, 1976.]

DOUGLAS EVENSON, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Respondents.

**COUNSEL**

Atchison, Haile & Haight and William K. Rentz for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Gordon Zane, Deputy Attorney General, for Defendants and Respondents.

Duane W. Anderson as Amicus Curiae for Defendants and Respondents.

**OPINION**

**ROUSE, J.**—Plaintiff appeals from a judgment denying his petition for a writ of mandate to compel the defendant to pay him unemployment insurance benefits.

The record discloses that, on August 1, 1974, the Employment Development Department denied plaintiff, Douglas Evenson, unemployment benefits. There were two grounds for this action: first, that he voluntarily terminated his employment without "good cause," within the meaning of section 1256 of the Unemployment Insurance Code when he refused to pay union dues as required by his employer's union contract; second, that because of his long hair and beard he had voluntarily made himself unavailable for employment within the meaning of section 1253, subdivision (c), of the Unemployment Insurance Code. Plaintiff then appealed to a referee who sustained the department's decision on the first ground and thus found it unnecessary to decide the issue of the plaintiff's availability for work. This decision was affirmed by the Unemployment Insurance Appeals Board.

Thereafter, plaintiff sought a writ of mandate from the superior court to set aside the ruling and to compel issuance of the unemployment benefits. Based upon a review of the record of administrative proceedings and the stipulation by the parties that there was no factual dispute, the court made findings of fact as follows: that plaintiff was employed by Pacific Telephone Company for approximately seven and one-half years before terminating his employment on July 16, 1974; that while employed there, he was a member of the Communications Workers of America (a union) and paid dues of $7 a month up to January 1974, at which time he severed his relationship with the union and refused to pay dues because he thought the union was not operating effectively and that it was not properly representing the interests of the union membership; that prior to his withdrawal from the union, the union and the employer had entered into a collective bargaining agreement which provided that each employee who was a member of the union on the date of ratification or approval of the agreement must, as a condition of employment, pay or tender to the union amounts equal to the periodic dues applicable to members; that plaintiff was discharged from his employment solely because he refused to pay dues to the union; and that, prior to discharge, he was twice informed that it was his duty to pay those dues.

The court concluded as a matter of law that the employer-union contract requiring union members to pay union dues as a condition of employment did not violate the First Amendment; that the denial of unemployment benefits to an employee who had been terminated for voluntarily refusing to pay union dues under such a contract did not violate that employee's First Amendment rights; that when the California Unemployment Compensation Appeals Board determines that a former employee is entitled to unemployment benefits, it is required by law to charge the reserve account of the employer to provide such benefits; that respondent board did not abuse its discretion or act in an arbitrary manner during the administrative proceedings in which the plaintiff was denied unemployment benefits; and that it was unnecessary to decide whether the petitioner was unavailable for future employment because of his long hair.

In accordance with these findings, a judgment was entered denying the writ of mandate. Plaintiff appeals from that judgment.

Plaintiff's primary contention on appeal is that the denial of unemployment benefits, based solely upon his refusal to pay union dues,

infringes upon his freedom of association, as guaranteed by the First Amendment to the federal Constitution. Plaintiff takes the position that the payment of dues, or their equivalent, brings about an association between the dues payer and the union. According to plaintiff, it follows that the decision whether or not to pay those dues is an exercise of one's right of association, which exercise was penalized by government action when plaintiff was denied unemployment benefits. He claims that when government action penalizes a fundamental First Amendment right, it must be justified by a compelling state interest. Plaintiff denies that any such interest existed here.

In making this argument, plaintiff recognizes that union security clauses such as the one here involved, which condition employment on the payment of dues, have been held constitutional. He contends, however, that the conditioning of unemployment benefits on the payment of those dues involves direct government action, constituting a second penalty on the exercise of his rights of freedom of association, and that the constitutionality of this practice has not been upheld.

In *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790], a Seventh-Day Adventist was discharged from her job for refusing to work on Saturday, the Sabbath Day of her faith. The State of South Carolina denied her unemployment benefits, claiming that she was unavailable for future work because she refused to work on Saturday. This decision was challenged as penalizing her right of free exercise of religion, as guaranteed by the First Amendment. The court stated that if the decision is to stand, "it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate . . . .' *NAACP* v. *Button,* 371 U.S. 415, 438." (P. 403 [10 L.Ed.2d p. 970].) The court found an unjustified infringement of her rights and held that a state may not constitutionally apply unemployment eligibility provisions so as to penalize the exercise of a worker's First Amendment rights of free exercise of religion and thus compel an abandonment of her religious convictions. (P. 410 [10 L.Ed.2d p. 974].)

In *King* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 199 [101 Cal.Rptr. 660], the court recognized that *Sherbert* reasoning applies with equal force to a denial of benefits which penalizes

First Amendment rights other than freedom of religion. (Pp. 205-206.) In that case, unemployment benefits were denied an applicant on the ground that he left work voluntarily and without good cause when he was discharged for refusing to remove a beard despite his knowledge that such removal was required in order to continue in his employment. The court found that the appellant's decision to wear the beard was an exercise of his right of freedom of expression and that the denial of benefits infringed on that exercise without the requisite compelling state interest. (P. 206.)

These cases make clear that when one exercises a constitutional right, and that exercise is the reason for the denial of unemployment benefits, then that denial is a penalty on the exercise of a constitutional right and justifiable only by a compelling state interest. Thus, a crucial question in this case is whether or not plaintiff was exercising a constitutional right when he refused to pay union dues.

Plaintiff maintains that the case most closely in point is *Retail Clerks* v. *Schermerhorn* (1963) 373 U.S. 746 [10 L.Ed.2d 678, 83 S.Ct. 1461], which he cites for the proposition that the required payment of union dues by nonmembers is the practical equivalent of required membership. He argues that this holding shows that the court recognized the equivalence between formal membership and dues-paying by a nonmember. According to plaintiff, the court decided, in effect, that from the standpoint of the individual, requiring the payment of dues is essentially the same as requiring actual membership in a union. Plaintiff asserts that it is clear, therefore, that the payment of dues brings about an association between the dues payer and the union, which association is protected by the First Amendment.

We believe that plaintiff has misinterpreted the *Schermerhorn* decision. The basic issue in that case was the scope and effect of section 14(b) of the National Labor Relations Act, which allows a state to prohibit "agreements requiring membership in a labor organization as a condition of employment . . . ." There the court had to determine if an "agency shop" clause, which did not require actual membership in the union but did condition employment on the payment of initiation fees and periodic dues, was an "agreement requiring membership" within the meaning of section 14(b) and therefore an agreement which state law could prohibit. The court held that the agency shop agreement did fall within the purview of section 14(b) and stated that the agency shop

agreement "is the 'practical equivalent' of an 'agreement requiring membership in a labor organization as a condition of employment.'" (P. 751 [10 L.Ed.2d p. 682].)

*Schermerhorn* involved a statutory interpretation of section 14(b). The court was only concerned with determining whether, under the facts of that case, agreements which did not require formal membership in a labor organization were the "practical equivalent" of "agreements requiring membership," as that term was used in section 14(b). The court was not concerned with the practical effect on an individual of a requirement to pay dues and it did not, as plaintiff asserts, "firmly hold" that the required payment of union dues was the practical equivalent of required membership. In fact, in *Labor Board* v. *General Motors* (1963) 373 U.S. 734 [10 L.Ed.2d 670, 83 S.Ct. 1453], which was decided the same day as *Schermerhorn,* the court stated that when Congress allowed employers and unions to condition employment on union membership, in the proviso to section 8(a)(3) of the National Labor Relations Act, it intended that "membership" could be satisfied by the mere payment of periodic dues and initiation fees. (P. 742 [10 L.Ed.2d pp. 675-676].) The court pointed out that, in so doing, Congress intended to reduce the evils of compulsory unionism (p. 744 [10 L.Ed.2d p. 677]) and thus "'Membership' as a condition of employment is whittled down to its financial core." (P. 742 [10 L.Ed.2d p. 676].)

While *Schermerhorn* does not resolve the question of whether plaintiff's choice not to pay union dues was an exercise of First Amendment rights, three other cases do. These cases are *Railway Employes' Dept.* v. *Hanson* (1956) 351 U.S. 225 [100 L.Ed. 1112, 76 S.Ct. 714]; *Machinists* v. *Street* (1961) 367 U.S. 740 [6 L.Ed.2d 1141, 81 S.Ct. 1784]; and *Lathrop* v. *Donohue* (1961) 367 U.S. 820 [6 L.Ed.2d 1191, 81 S.Ct. 1826].[1] While none of these cases specifically answer the question, we find that the necessary implication of the holdings therein is that no *protected* rights of association were involved in the decision not to pay union dues. If the court felt otherwise, then it would have had to conclude that any government action resulting in a requirement to pay those dues infringed on the exercise of the right of association. Therefore, such action would have been held to violate the First Amendment unless it was justified by

---

[1]The main issue dividing the court in both *Lathrop* and *Street* was whether or not the money received by the labor organization could be used for political purposes. That issue is not presented in the instant case.

a substantial government interest. (See *N.A.A.C.P.* v. *Alabama* (1958) 357 U.S. 449 [2 L.Ed.2d 1488, 78 S.Ct. 1163]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415 [9 L.Ed.2d 405, 83 S.Ct. 328]; *Railroad Trainmen* v. *Virginia Bar* (1964) 377 U.S. 1 [12 L.Ed.2d 89, 84 S.Ct. 1113, 11 A.L.R.3d 1196]; Justice Douglas' dissent in *Lathrop* v. *Donohue, supra,* at pp. 881-882 [6 L.Ed.2d at pp. 1227-1228].) In each of these cases the court noted that substantial state interests were involved (e.g., avoiding industrial strife by minimizing the effects of the free rider system in the labor area, and improving the quality of professional services in the bar membership area); however, the court did not proceed on the rationale that the government action, requiring payment of dues, needed these interests to justify some impingement of rights of association. Instead, it held that the government action did not impinge, impair or infringe any rights of free association.

While it is not entirely clear why the United States Supreme Court felt that rights of association were involved,[2] it is clear that the court concluded that no protected rights of association were involved in not paying union dues. Therefore, the decision not to pay such dues cannot be an exercise of a First Amendment right. Thus, plaintiff has failed to satisfy the initial requirement of *Sherbert* v. *Verner* and *King* v. *California Unemployment Ins. Appeals Bd.,* both *supra,* that is, he has not shown that the denial of unemployment benefits infringed on his constitutional rights. We need not decide, therefore, whether the government action in denying such benefits is justified by a compelling state interest.

Plantiff contends that the government action in the present case is more substantial and direct than in *Hanson, supra.* He argues that there can be no invasion or impairment of a right until such time as a burden is placed on the exercise of a right. He claims that, in the present case, the state imposed such a burden by denying him unemployment benefits, whereas, in *Hanson,* the burden of discharge from employment would be imposed by private parties and government action would not be significantly involved in the invasion of the right of association.

---

[2] It might have been, as amicus curiae contends, because the court concluded that compulsory financial support did not amount to a compulsory association, or more probably, because the court considered that whatever association did result was not entitled to First Amendment protection. Note, however, the second issue in *Street* and *Lathrop,* in which the court evidenced some constitutional concern that, if the collected dues were used for political purposes, a compelled political association might result in a violation of the right to freedom of speech.

Plaintiff's argument must be rejected for two reasons: first, his claim was specifically rejected in *Hanson* when the court said, "If private rights are being invaded, it is by force of an agreement made pursuant to federal law . . . . [T]he federal statute is the source of the power and authority by which any private rights are lost or sacrificed." (*Railway Employes' Dept.* v. *Hanson, supra,* at p. 232 [100 L.Ed. at p. 1130].) Second, in *Lathrop, supra,* the compulsory bar membership case, state involvement was not insignificant and yet the court found no impairment of constitutional rights. While the bar and labor areas are distinguishable based on the former's regulatory purpose, the court was not inclined to make such a distinction. (*Hanson, supra,* at p. 238 [100 L.Ed. at pp. 1133-1134]; *Lathrop, supra,* at pp. 843, 861 [6 L.Ed.2d at pp. 1205, 1215].)

Plaintiff next contends that *Hanson* was a limited holding which left open the question involved in this case. He notes that the court in *Hanson* concluded its opinion by stating, "We express no opinion on the use of other conditions to secure or maintain membership in a labor organization operating under a union or closed shop agreement." (P. 238 [100 L.Ed. p. 1134].) Plaintiff maintains that the withholding of unemployment benefits "is a condition used to support the union shop agreement and thereby to secure and maintain membership in the union, and it is a condition which was not passed upon in *Hanson*." He adds that *Street* did no more than reaffirm *Hanson.*

The difficulty with plaintiff's argument is that he fails to distinguish between "other conditions to secure or maintain membership" and a penalty for failure to meet those conditions. When the *Hanson* court spoke of other conditions to secure or maintain membership, it was paraphrasing section 2, Eleventh of the Railway Labor Act, which provided that the acquiring or retaining of "membership" could only be conditioned on the payment of periodic dues or their equivalent. Therefore, "other conditions" refer to conditions of membership other than, or in addition to, the mere payment of dues (e.g., a requirement to attend meetings or comply with union by-laws, etc.). Of course, if an employee working under a union shop agreement does not acquire or maintain "membership" in the union, he is subject to penalties such as discharge. It seems clear, however, that by other conditions, the *Hanson* court did not mean other penalties such as denial of benefits.

Finally, plaintiff suggests that *Buckley* v. *American Fed. of Television & Radio Artists* (2d Cir. 1974) 496 F.2d 305, implies that First Amendment

rights are involved in the decision of whether or not to pay union dues. That case, which is clearly the strongest case for the appellant, involved a suit by two political commentators charging that the "[union] requirement that appellees pay its prescribed dues violates appellees' first amendment rights . . . ." (P. 310.) Although the Court of Appeals found no violation, they did not do so on the grounds that no rights were impaired. The court held that Congress has a proper purpose in authorizing mandatory union dues, and that the dues requirement was a reasonable means to achieve that purpose and therefore rights of free speech were not unwarrantedly abridged. (P. 311.) However, as plaintiff notes, that case does not clearly say that First Amendment rights were involved, but rather it "waffles" on the issue. The United States Court of Appeals concluded its discussion by saying, "If there is any burden on appellees' free speech it would appear to be no more objectionable than a 'nondiscriminatory [form] of general taxation' . . . ." (P. 311.) Regardless of the merit of such analogy, this statement suggests that the court was assuming, rather than deciding, that a right was involved and was invaded. In view of this fact and in light of *Hanson, Street* and *Lathrop,* the value of the case is highly speculative.

In summary, *Sherbert* and *King,* absent a compelling state interest, would prohibit the state from denying an applicant his unemployment benefits if that denial infringed or penalized an exercise of his right of freedom of association. *Hanson, Street* and *Lathrop* make it clear, however, that the decision not to pay dues is not an exercise of a right protected by the First Amendment. Therefore, the denial of benefits in the present case did not infringe on the exercise of a constitutional right and it needs no compelling state interest for its justification.

In addition to the constitutional issues raised by plaintiff, we must also consider the propriety of the board's ruling that the plaintiff was ineligible for unemployment benefits because he "left work voluntarily and without good cause."

The functions of the various tribunals involved in litigation of this type were summarized in *Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524 [116 Cal.Rptr. 122]: "In reviewing a decision of the board, the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the administrative agency's findings are supported by the weight of the evidence. [Citation.] . . . On review of the judgment the appellate court is confined to an

inquiry whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence [citations], unless the probative facts are uncontradicted, not susceptible of opposing inferences, and, as a matter of law, compel a different conclusion from that reached by the trial court. [Citations.]" (P. 527.)

In the present case, the facts are not disputed. Plaintiff was employed for several years under an agreement between his employer and the union requiring that he pay dues as a condition of employment. He stopped paying dues because he felt the union was ineffective. He was twice reminded by his employer that he must pay his union dues in order to continue in his employment. When he persisted in his refusal to pay dues, his employment was terminated.

Section 1256 of the Unemployment Insurance Code provides, in pertinent part, that "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause . . . ."

Thus, the precise question which must be answered is whether or not an employee's willful refusal to pay union dues, resulting in his termination pursuant to a collective bargaining agreement between his employer and the union, constitutes leaving his employment "voluntarily [and] without good cause" within the meaning of section 1256. We hold that it does.

Section 1256 must be read in light of section 100 of the Unemployment Insurance Code, which "was included in the Code '[a]s a guide to . . . interpretation and application' of other sections (Unemp. Ins. Code, § 100)." (*Jefferson* v. *Unemployment Ins. Appeals Bd.* (1976) 59 Cal.App.3d 72, 79 [130 Cal.Rptr. 405].) Section 100 provides, in part, "The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed *through no fault of their own*, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (Italics added.)

In light of section 100 it has been concluded that " 'fault is the basic element to be considered in interpreting and applying the code sections

on unemployment compensation.' " (*Jefferson* v. *Unemployment Ins. Appeals Bd., supra,* at p. 79; *Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 521 [116 Cal.Rptr. 16]; *Sherman Bertram, Inc.* v. *California Dept. of Employment* (1962) 202 Cal.App.2d 733, 736 [21 Cal.Rptr. 130].) Therefore, in deciding if an employee has "left work voluntarily," the cases have not given that phrase its literal meaning. An employee need not actually choose to be unemployed; it is enough that his unemployment is the result of his own fault—a willful act causing or instigating his unemployment. (*Sherman Bertram, Inc., supra,* at p. 736; *Jefferson, supra,* at p. 79.)[3] ██ Under this standard, it is clear that plaintiff left work voluntarily. He chose not to pay the dues after two warnings, and his choice was the direct cause of his unemployment.

Even if an employee has left work voluntarily, he is still eligible for benefits if he left for "good cause." ██ Good cause may exist for personal reasons but those reasons must be so imperative and compelling as to make the voluntary leaving "involuntary." (*Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332, 337 [108 Cal.Rptr. 167]; employee's desire to attend school does not constitute good cause.) Voluntary termination must be based on serious and exigent circumstances. (*Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439-440 [120 Cal.Rptr. 855], holding that a four-hour round trip on a bus did not entitle the employee to quit; see also *Warriner* v. *Unemployment Ins. Appeals Bd.* (1973) 32 Cal.App.3d 353 [108 Cal.Rptr. 153], holding that a requirement that a female, who felt she was the victim of discrimination, train her male replacement, was not good cause for her termination of employment.) In general, "good cause," as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed; the quitting must be for such a cause as would, in a similar situation, reasonably motivate the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the unemployed. (81 C.J.S., Social Security and Public Welfare, § 167, p. 253.)

---

[3] Plaintiff maintains that he "acted in the good faith exercise of his freedom of association," that he did not engage in "wrongful conduct" and that he was not "at fault" for his discharge. If plaintiff thereby implies that fault, for the purpose of the Unemployment Insurance Code, is used in its moral sense, denoting wrongful conduct, he is mistaken. As expressed in *Sherman, supra,* it is enough that his loss of employment was the result of "an act of volition on his part . . . tantamount to a voluntary leaving." (P. 738.)

■ The trial court found that plaintiff refused to pay his dues because he felt the union was ineffective and did not represent the interests of the employees. Plaintiff contends that his good faith disenchantment with the union was the motivating factor in his actions and the primary cause for his unemployment.

■ Disenchantment with a union, whether or not it is in good faith, does not amount to a compelling or serious reason which would justify a voluntary termination. If truly dissatisfied by the actions of the union, plaintiff could have worked within the collective bargaining framework to correct the union's deficiencies. If the union refused to change, he could have attempted to persuade a sufficient number of his fellow employees to replace that union with a more receptive one. Even if all else failed, the plaintiff could have maintained his employment, and still kept his contact with the union to a minimum, by paying monthly dues of $7. In view of the alternatives available to him and the limited burden to his continued employment, plaintiff did not have "such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed." (81 C.J.S., Social Security and Public Welfare, *supra*, at p. 253.)

In reaching the conclusion that plaintiff left work voluntarily and without good cause we are aided by decisions in other jurisdictions. In *Amuchastegui* v. *Department of Employment* (1971) 4 Ore.App. 456 [479 P.2d 526], an employee, after a dispute arose with her union, refused to pay dues as required by the collective bargaining agreement and was discharged. The Oregon court upheld a denial of unemployment benefits based on a statute disqualifying an employee who "left work voluntarily without good cause." In *In re Malaspina's Claim* (1956) 308 N.Y. 413 [131 N.E.2d 709], the highest court of New York stated that "by refusing or failing to become a member, the employee brings about his own discharge, and such action or inaction may not logically or reasonably be regarded as anything but voluntary on his part. In other words, joining the union was a condition precedent to continued employment; if, for any reason, he did not join and was discharged, he must be deemed to have quit voluntarily. If the rule were otherwise, the collective bargaining provision insisting upon union membership as a prerequisite to employment would be considerably diluted, if not destroyed." (P. 711.) Identical results were reached by the Delaware and Pennsylvania courts. (*State* ex rel. *Dept. of Lab.* v. *Unemployment Ins. A. Bd.* (Del. 1972) 297

A.2d 412, 415; *Butler* v. *Unemployment Compensation Bd. of Review* (1959) 189 Pa.Super. 605 [151 A.2d 843]; *Grant Bldg., Inc.* v. *Unemployment Comp. Bd. of Rev.* (1966) 208 Pa.Super. 280 [224 A.2d 647].)

We conclude that the trial court did not err in denying plaintiff's petition for a writ of mandate.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.