[Civ. No. 42013. First Dist., Div. Two. Feb. 2, 1978.]

ARDATH DRYSDALE, Plaintiff and Appellant, v.
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al.,
Defendants and Respondents.

346

**COUNSEL**

Edward D. Suman for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Asher Rubin and Catherine Van Aken, Deputy Attorneys General, Bronson, Bronson & McKinnon and Shand S. Stephens for Defendants and Respondents.

**OPINION**

WHITE, J.*—Plaintiff and appellant Ardath Drysdale appeals from a judgment of the Santa Clara County Superior Court denying her petition

*Assigned by the Chairperson of the Judicial Council.

for writ of mandate to compel the California Unemployment Insurance Appeals Board to set aside its decision denying unemployment compen- sation benefits. We affirm the judgment.

## ISSUE

Is there substantial evidence to support the conclusion that plaintiff's behavior constituted wilful misconduct?

## STATEMENT OF CASE

On November 18, 1976, plaintiff and appellant Ardath S. Drysdale caused a petition for writ of mandate to be filed in the Superior Court of Santa Clara County naming California Department of Human Resources Development (hereinafter Department),[1] California Unemployment Insurance Appeals Board (hereinafter Board) and Boise Cascade Corporation as defendants. The petition contains the following allegations: Plaintiff received notice from her employer, Boise Cascade Corporation, on December 3, 1975, that her services would no longer be needed because of an incident of tardiness. Plaintiff filed a claim for unemployment benefits and thereafter received notification from the Department that she was ineligible for such benefits because she was fired for misconduct.[2] Plaintiff appealed the decision of the Department to the Board, but the Board upheld the determination of the Department. Plaintiff contends the ruling was arbitrary and capricious.

On December 13, 1976, an alternative writ of mandate was issued. Defendants answered and admitted that plaintiff's employment was terminated and that she was denied unemployment benefits but essentially denied the other allegations in the petition. On February 10, 1977, the intended decision of the Honorable J. Barton Phelps was filed. In the

[1]The Department of Human Resources Development was redesignated effective January 1, 1974, as the Employment Development Department. (Unemp. Ins. Code. § 133.)

[2]The Determination/Ruling of the Department reads as follows: "REASON FOR DECISION: You were discharged for repeatedly reporting late for work. Your reasons for being tardy cannot be considered compelling. Since it is the duty of an employee to report for work at the designated time, it must be held that you were discharged for actions detrimental to your employer's interest."

intended decision the trial court came to the conclusion that plaintiff's tardiness was wilful misconduct. Judgment was entered discharging the alternative writ of mandate and denying a peremptory writ on February 25, 1977. On March 28, 1977, plaintiff filed a timely notice of appeal from the judgment.

## STATEMENT OF FACTS

Plaintiff was hired by Boise Cascade Corporation in Palo Alto as a legal secretary for Robert Desky. At the time plaintiff commenced her employment on April 22, 1975, she was informed that the regular hours for work were from 8:30 a.m. to 5 p.m. with an hour for lunch. On the first three days of plaintiff's employment she arrived at 8:30 and thereafter arrived after this time. Desky was willing to allow plaintiff to come to work between 8:30 and 9 a.m. as long as she was prepared to work and "in motion" by 9 a.m. Frequently, however, appellant arrived after 9 a.m. and on several occasions she took more than an hour for lunch.

Desky testified that he mentioned to plaintiff on at least four or five occasions that plaintiff was getting to work too late and that it was expected of her to be there on time. On July 30, 1975, plaintiff went to lunch with another employee a few minutes after 12 and did not return until approximately 3 p.m. Desky immediately admonished plaintiff for her long lunch. Desky then had Ann Davie, another employee of the legal department, prepare and circulate a memorandum to all employees of the legal department stating that the work day commences at 8:30 a.m. with a one-hour lunch period. The memorandum further provides: "Persistent refusal to observe this policy will be evaluated as part of the employee's continued fitness for his or her position."[3]

Desky further testified that on one day in September of 1975 plaintiff arrived at 9:15 or 9:20. Because plaintiff had been arriving late during this period of time, he called her into his office and told her since she was in serious violation of company rules, he felt it necessary to reprimand her and to enter the reprimand in the company records. This same day

---

[3]Plaintiff testified that she did not receive this memorandum although she remembered receiving a similar memorandum in August of 1975 which simply provided that work started at 8:30 and that the lunch hour was between 12 and 1.

Desky had the following memorandum placed in plaintiff's personnel file: "On a few prior occasions, I have found it necessary to remind my secretary, Ardie Drysdale, that I expected her to begin her work day at 8:30 A.M. and to take her lunch hour from 12:00 P.M. to 1:00 P.M. Today, I found it necessary to place Ardie on probation. She arrived at the office at 9:15 A.M. with the excuse that she overslept. I warned Ardie that a repetition of this type of occurrence would result in immediate termination."[4]

On November 4, 1975, plaintiff arrived to work two hours late. Desky told her that it was important for her to be available during the designated work hours and had two-hours pay deducted from her salary. After an extended Thanksgiving holiday, plaintiff failed to report to work Monday, December 1, 1975, because she was fatigued from a vacation trip to Lake Arrowhead. On Tuesday, December 2, 1975, plaintiff did not report to work until 9:30 a.m. On Wednesday, December 3, it was prearranged that plaintiff would have important papers in the Palo Alto office by 9 a.m. so that the senior vice president of Boise could discuss them over the telephone with Desky who was then in Hawaii. However, plaintiff did not arrive on time and the discussion had to be postponed to the inconvenience of both men. It was at this point that Desky instructed Ann Davie to terminate plaintiff's employment. Plaintiff stated that she was late on December 3 because her automobile was incapacitated on the freeway. Therefore, she was unable to notify her office by telephone of her predicament. She stated that some man in a pickup truck stopped, jiggled something and got her car started.[5]

Plaintiff was of the opinion that since she worked several hours a week overtime, for which she was compensated, her starting time was flexible.

After her discharge, plaintiff reported to the local office of the Employment Development Department and applied for unemployment

---

[4]Plaintiff testified that she never saw the September memorandum nor did Desky call her into his office in September and reprimand her.

[5]Desky testified that appellant, when asked why she arrived at 20 minutes or so past 9 a.m. on Wednesday, December 3, said: "I'm sorry, I forgot"; further, "She volunteered in the course of that discussion that she had had battery trouble with her car and had to call National or Three A's."

insurance benefits. The benefits were denied. Plaintiff appealed the determination of the Department. Thereafter, on February 10, 1976, a hearing was held before Administrative Law Judge Justin Rockwell. The administrative law judge found that plaintiff's repeated tardiness to work constituted misconduct which disqualified her from benefits. Plaintiff appealed the decision of the administrative law judge to the Board. The Board affirmed the decision of the administrative law judge. Thereafter plaintiff filed her petition for writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure in the Superior Court of Santa Clara County. The superior court trial judge after employing the independent judgment test found that there was wilful misconduct on the part of plaintiff and denied the petition for writ of mandate. Plaintiff appeals from the judgment denying the petition for writ of mandate.

Is there substantial evidence to support the conclusion that plaintiff's behavior constituted wilful misconduct?

■ In reviewing a decision of the Board, the superior court must exercise its independent judgment on the evidence to determine if the findings of the Board are supported by the weight of the evidence. (*Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524, 527 [116 Cal.Rptr. 122].) Stated another way, the litigants are entitled to a limited trial de novo in the superior court. (*Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 518 [116 Cal.Rptr. 16]; *Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 537 [92 Cal.Rptr. 525].) The trial judge in the instant case employed the proper test in reviewing the decision of the Board.

While the superior court exercises its independent judgment on the administrative evidence, California law accords the appellate court a much narrower scope of review. (*Rowe* v. *Hansen, supra,* 41 Cal.App.3d 512, 518.) The power of appellate review of the trial court judgment is restricted to a determination of whether the trial court, in conducting its independent review of the administrative record, made findings of fact and a judgment which are supported by substantial evidence. (*Agnone* v. *Hansen, supra,* 41 Cal.App.3d 524, 527; *Warriner* v. *Unemployment Ins. Appeals Bd.* (1973) 32 Cal.App.3d 353, 358 [108 Cal.Rptr. 153].) That is, if substantial evidence supports the trial court's findings of fact, the appellate court may disregard the conflicting evidence, resolve

conflicting inference in favor of the prevailing party, and affirm the judgment. (*Rowe* v. *Hansen, supra,* at pp. 518-519.)

Section 1256 of the Unemployment Insurance Code provides in pertinent part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work." ■ The definition of "wilful misconduct" in the context of section 1256 of the Unemployment Insurance Code is settled. The numerous California cases interpreting the section clearly equate wilful misconduct with: " '[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' " (*Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719, 724 [339 P.2d 947]; see also *Rowe* v. *Hansen, supra,* 41 Cal.App.3d 512, 520; *Silva* v. *Nelson* (1973) 31 Cal.App.3d 136, 140 [106 Cal.Rptr. 908]; *Jacobs* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 1035, 1037 [102 Cal.Rptr. 364]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566].)

■ Section 1256 must be read in light of section 100 of the Unemployment Insurance Code which was included in the code as a guide to interpretation and application of other sections of the code. (*Jefferson* v. *Unemployment Ins. Appeals Bd.* (1976) 59 Cal.App.3d 72, 79 [130 Cal.Rptr. 405].) Section 100 provides in pertinent part: "The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons *unemployed through no fault of their own,* and to reduce involuntary unemployment and the

suffering caused thereby to a minimum." (Italics added.) "Accordingly, fault is the basic element to be considered in interpreting and applying the code sections on unemployment compensation. [Citation.] The test for misconduct is essentially volitional. 'The conduct may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable.' " (*Rowe* v. *Hansen, supra,* 41 Cal.App.3d 512, 521.)

█ Plaintiff argues that simple tardiness does not constitute wilful misconduct. Plaintiff asserts that this court should disregard the testimony that she was repeatedly late and that she was admonished and placed on probation.[6] Plaintiff's position is that this court should view the evidence in a light most favorable to her. However, as noted above, this court is required to sustain the determination of the trial court if there is substantial evidence, whether contradicted or not, which supports it. (*Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* 17 Cal.App.3d 1128, 1134.) In other words all conflicts in the evidence must be resolved in favor of defendants (respondents herein). (*Id.*) Since there is substantial evidence that plaintiff was repeatedly late for work and admonished several times and placed on probation, the sole issue remaining is whether this behavior constitutes "wilful misconduct."

Plaintiff relies upon *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], to support her contention that tardiness does not constitute wilful misconduct. In *Skelly,* the petitioner, a doctor, was employed by the State Department of Health Care Services as a medical consultant. (*Id.,* at p. 197.) He held that position for about seven years and was a permanent civil service employee. (*Id.*) Petitioner often took 10 to 15 minutes more for lunch than the allotted time. Furthermore, on two occasions petitioner was seen in a bar during working hours. Petitioner's employment was terminated. The California Supreme Court first determined that the state statutory scheme regulating civil

---

[6]Plaintiff contends since she was required by the workload of the office to do a certain amount of overtime, it was an unreasonable demand to expect her to arrive on time in the morning. She asserts that her long hours imply a flexible arrival time. Administrative Law Judge Rockwell questioned plaintiff: "Q. If nobody warned you regarding the starting hours, did anybody tell you affirmatively that you could come to work when you chose? [¶] A. No. [¶] Q. In other words, tell you that a flexible time was permitted? [¶] A. Nobody told me that."

service employment confers on a permanent civil service employee a property interest in continuation of his employment and that this interest is protected by due process. (*Id.*, at p. 206.) The court concluded that provisions of the Civil Service Act relating to punitive action against a permanent employee violate due process. (*Id.*, at p. 215.) The court also concluded that the penalty of dismissal was excessive and disproportionate to petitioner's behavior. (*Id.*, at p. 218.) In reaching this conclusion the court primarily relied on the fact that the record was "devoid of evidence directly showing how petitioner's minor deviations from the prescribed time schedule adversely affected the public service." (*Id.*, at p. 218.) In the context of public employee discipline cases the overriding consideration is the extent to which the employee's misconduct resulted in, or is likely to result in, harm to the public service. (*Id.*, at p. 218.)

Plaintiff's reliance on *Skelly* is misplaced. The test for determining whether discipline in public employee cases is proper is somewhat different from the test used to determine whether a private employee's conduct constitutes wilful misconduct. But if the tests were identical it should be noted that there is evidence in the administrative record that plaintiff's tardiness was an inconvenience to her boss. On the occasion plaintiff did not return from lunch until 3 p.m., Desky was preparing to go on a business trip and was waiting for plaintiff to dictate some necessary work. On another occasion Desky missed an important telephone conversation with another employee because of plaintiff's tardiness. However, it is necessary to look at several cases to determine what is wilful misconduct in the context of unemployment benefit cases.

In *Davis* v. *Unemployment Ins. Appeals Bd.* (1974) 43 Cal.App.3d 71, 73 [117 Cal.Rptr. 463], the trial court denied issuance of a writ of mandate to compel the Unemployment Insurance Appeals Board to set aside its decision denying benefits to a nurse who was discharged by a hospital for administering only half of the amount of medication that had been prescribed for a patient. Under hospital rules the prescribed dosage could not be changed except by permission of the patient's doctor, his designated standby, or, if neither could be contacted, the house doctor. The nurse did not follow this procedure. The Court of Appeal affirmed, noting that the nurse had on previous occasions not given the proper dosage of medication because she did not believe that patients should receive what in her opinion was excessive medication.

(*Id.,* at p. 75.) The nurse had previously been told of this problem concerning medication. (*Id.,* at p. 75.) The court in concluding that the trial court's determination that the nurse was discharged for misconduct was supported by substantial evidence stated: "On the evidence before the trial court, the court could reasonably infer that petitioner knew of the rules for changing prescriptions, did not wish to administer the amount of medication prescribed and deliberately did not consult a doctor, but instead used the in-charge nurse as either a sounding board or as an excuse for not giving the required medication, knowing that it was petitioner's responsibility as medication nurse to make the determination and not the charge nurse." (*Id.,* at p. 76.)

In *Rowe* v. *Hansen, supra,* 41 Cal.App.3d 512, a discharged employee appealed from the judgment of the trial court denying a writ of mandate to compel the Unemployment Insurance Appeals Board to set aside its decision denying her unemployment compensation benefits. Petitioner in *Rowe* was employed by Host International at its restaurant in the San Francisco airport as a hostess and to periodically relieve the cashier. Late in the shift, petitioner had a sweater draped around her shoulders with the sleeves hanging loose. (*Id.,* at p. 515.) Her supervisor told her, " 'Put the sweater on or take it off.' " (*Id.,* at p. 515.) Petitioner refused and her supervisor told her " 'to go on home.' " When petitioner replied that she would not leave, her supervisor told her she was discharged. (*Id.,* at p. 515.) There were also 11 separate instances of misconduct recorded in the employer's logbook and numerous other infractions recorded in petitioner's personnel file. (*Id.,* at p. 516.) The Court of Appeal affirmed stating that in light of petitioner's many violations of work rules and regulations, it was reasonable to infer "that petitioner's conduct was a manifestation of a persistent and enduring intractability that impresses her conduct with the character of insubordination, i.e., a wilful, deliberate violation of reasonable orders of her employer." (*Id.,* at pp. 522-523.)

In *Agnone* v. *Hansen, supra,* 41 Cal.App.3d 524, plaintiff appealed from the denial by the superior court of a petition for writ of mandate seeking to compel the Unemployment Insurance Appeals Board to grant unemployment compensation benefits to plaintiff. Plaintiff, a housekeeper at an 18-bed nursing home, was told to clean a bathroom and she said she would do so when "she got around to it." (*Id.,* at p. 526.) The other employee, who requested that plaintiff clean the bathroom, told

plaintiff if she did not comply he would report the incident to the supervisor. At this point, in a loud voice, punctuated by profanity, plaintiff demanded that the other employee never threaten her again. When the supervisor was informed of the altercation, she discharged plaintiff. The supervisor testified that plaintiff's work was not satisfactory and she was reluctant to take orders and plaintiff had previously been told that her work was not being performed to satisfaction. (*Id.,* at p. 527.) The Court of Appeal in affirming the judgment stated from the evidence "it is reasonably inferable that plaintiff was capable of performing the tasks assigned to her, and that her failure to do so was due to carelessness and negligence of such degree and recurrence as to manifest wrongful intent and to show an intentional and substantial disregard of the employer's interest and of the plaintiff's duties and obligations to her employer." (*Id.,* at pp. 528-529.)

In *Silva* v. *Nelson, supra,* 31 Cal.App.3d 136, the Court of Appeal reversed the decision of the superior court denying the appellant's petition for a writ of mandate, holding as a matter of law that the conduct of the appellant did not constitute wilful misconduct. (*Id.,* at p. 139.) Appellant had departed work early without permission. The next day his employer spoke to him about his unauthorized departure, advising him that if such conduct were repeated he might as well not return. Appellant responded that he did not " 'give a shit.' " (*Id.,* at p. 138.) He was immediately discharged, the sole reason therefor being this statement. The court held that "the single instance of an offensive remark uttered in the circumstances disclosed in the instant record falls within the category of a mere mistake or error in judgment—a 'minor peccadillo'—and is not misconduct disqualifying appellant from unemployment insurance benefits." (*Id.,* at p. 142.)

In the instant case this court is not concerned with an isolated incident but with recurring conduct of tardiness after repeated admonitions regarding the fact that working hours were 8:30 a.m. to 5 p.m. with an hour for lunch. It was therefore reasonable for the Board and the trial court to infer from the fact of plaintiff's recurring tardiness that her conduct was intentional and showed a substantial disregard of her employer's interest.[7] This court is bound by the trial court's determina-

---

[7]Plaintiff states that the issue "boils down" to whether her conduct "was tantamount to volitionally leaving her job." "An employee need not actually choose to be unemployed; it is enough that his unemployment is the result of his own fault—a willful act causing or instigating his unemployment." (*Evenson* v. *Unemployment Ins. Appeals Bd.* (1976) 62

tion "unless the probative facts are uncontradicted, not susceptible of opposing inferences, and, as a matter of law, compel a different conclusion from that reached by the trial court." (*Agnone* v. *Hansen, supra,* 41 Cal.App.3d 524, 527.)[8]

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

---

Cal.App.3d 1005, 1016 [133 Cal.Rptr. 488].) Plaintiff was tardy after several warnings and thus her unemployment was her own fault.

[8]Although no California case which considered whether repeated incidents of tardiness is wilful misconduct within the meaning of section 1256 of the Unemployment Insurance Code has been brought to our attention, other jurisdictions have considered the issue. The American Law Reports, in an article entitled Discharge For Absenteeism or Tardiness as Affecting Right to Unemployment Compensation (58 A.L.R.3d 674), has collected numerous cases from other jurisdictions which have considered the issue. The large majority of the cases cited in the article held or recognized that persistent or chronic absenteeism or tardiness, without reasonable excuse, or the absence or tardiness if continued in the face of warnings by the employer, constitutes wilful misconduct precluding payments of unemployment benefits upon discharge.