[Civ. No. 39459. First Dist., Div. One. Feb. 10, 1978.]

KILPATRICK'S BAKERIES, INC., et al.,
Plaintiffs and Appellants, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Respondents;
BAKERY & CONFECTIONERY WORKERS INTERNATIONAL
UNION OF AMERICA, LOCALS 24, 119, 120, 85 and 43,
Intervener and Respondent.

540

**COUNSEL**

Pettit, Evers & Martin, Robert M. Cassel and Phyllis E. Andelin for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendants and Respondents.

No appearance for Intervener and Respondent.

## OPINION

**KELLY, J.**\*—This case involves claims for unemployment compensation by union employees of the appellants who became unemployed as a result of a labor dispute in 1972.

Following complex administrative procedures and decisions, both employees and appellants-employers appealed a referee's decision partially allowing and disallowing various union employee unemployment benefit claims to the respondent California Unemployment Insurance Appeals Board. This board reversed the ruling of the referee, granting benefits to all claimant employees of the appellants. The appellants sought judicial review of the appeals board's decision by filing a petition for writ of mandamus with the Superior Court of Alameda County. On January 2, 1976, the court below issued its judgment upholding the decision of the appeals board. As of March 3, 1976, the appellants, pursuant to Code of Civil Procedure section 1094.5[1] filed the current appeal seeking (1) a reversal of the lower court's decision and (2) grant of a writ of mandate that the appellants' unemployment insurance reserve account be relieved of all charges pertaining to unemployment resulting from the events which formed the basis of the labor dispute between the appellants and their employees.

The factual background of the labor dispute is detailed and complicated. The principle issues in dispute are the facts. For purposes of this court's ruling, however, it is not necessary for the court to decide the factual issues. ■ The only decisive issue is whether the trial court applied the proper standard for judicial review of the decision of the California Unemployment Insurance Appeals Board. In view of the court's ruling that the matter must be remanded to the trial court for further hearing, it is unnecessary to reach the other issues as presented by the parties in their respective briefs.

The trial court in its review of the Unemployment Insurance Appeals Board's decision decided, "that the appropriate scope of review is the

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Section 1094.5 provides in part: "(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

substantial evidence test rather than an independent review of the evidence." In coming to this conclusion, the trial court relied on the Supreme Court decision of *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], i.e., "that the Board's action requiring Petitioners [employers] to pay unemployment insurance benefits does not substantially affect a fundamental, vested right of Petitioners."[2] In so ruling, the trial court rejected the appellants' argument that the *Bixby* case does not alter the prior case law which appeared to hold that if property were involved an independent review of the evidence was required.

Under the provisions of the Unemployment Insurance Code, the state has established a statutory scheme whereby unemployment insurance benefits are awarded to persons involuntarily and innocently unemployed. The benefits are funded primarily by employer contributions. The employer's rate of contribution is determined by the number of former employees who have been awarded benefits. (Unemp. Ins. Code, § 976 et seq.) This statutory scheme thus creates certain rights and obligations for both claimants and employers.

*Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501 [247 P.2d 561], recognized that an unemployed claimant has a significant property right affected by an administrative decision rendering denial of his application reviewable under the independent judgment test. The court stated at page 504: "In our opinion the benefits provided for by the Unemployment Insurance Act are property rights within the meaning of the term as used in the cases requiring a trial de novo." Also, "*Any* person deprived of a property right by such an administrative body is entitled to a limited trial de novo in the superior court." (Italics added.)

*Thomas* was followed by *Chrysler Corp.* v. *California Emp. etc. Com.* (1953) 116 Cal.App.2d 8 [253 P.2d 68], where the Court of Appeal

---

[2]Utilizing the substantial evidence test rather than the independent review test, the trial court found there was substantial evidence in the record to support the board's determination that the *McKinley-Gardner* doctrine did not apply to the 1972 strike and lockout in the bakery industry. (*McKinley* v. *California Emp. etc. Com.* (1949) 34 Cal.2d 239 [29 P.2d 602], and *Gardner* v. *State of California* (1959) 53 Cal.2d 23 [346 P.2d 193].) The lower court ruled that the appellants' bargaining unit was not a "valid" multi-employer bargaining unit under federal labor law standards, because the employers were not sufficiently "cohesive" in that they "failed to delegate sufficient authority to the group negotiator." The opinion further relies on the board's reasoning that *appellants'* lockout was not reasonably foreseeable *before* the strike, because *after* the strike began two other employers chose not to lock out.

recognized the employer's statutory right, holding that an employer has a fundamental property right affected by awards of unemployment insurance benefits, which awards are charged against the employer's unemployment insurance reserve account: "Any final decision of the administrative tribunal which awards benefits to a claimant.has the effect of depleting an employer's reserve account, and may thereby adversely affect his rate of contributions to the fund during a particular rating period. It is of direct financial advantage to an employer to prevent inroads on his reserve account chargeable to benefit payments in order to protect his merit rating or to become eligible for a reduced rate of contribution. *The imposition of an erroneous charge against an employer's account, with the attendant consequence of his having to pay an increased contribution, amounts to a wrongful deprivation of property.* The petitioner, as a contributing employer, has a vital interest in the status or condition of its reserve account and since the administrative decision here in question may affect its financial responsibility to the unemployment fund, a *sufficient right of property is involved to entitle it to a limited trial de novo as to the propriety of the charges made against its account.*" (*Id.,* at pp. 14-15; italics added.)

*Chrysler* was followed by *General Motors Corp. v. Cal. Unemployment Ins. Appeals Bd.* (1967) 253 Cal.App.2d 540 [61 Cal.Rptr. 483], wherein the court held that a judicial review of the ruling of the California Unemployment Insurance Appeals Board is subject to a limited trial de novo in the superior court upon which the trial judge must examine the administrative record and exercise his independent judgment as to the validity, effect and weight of the evidence.

The *Thomas* case was concerned with an employee's claim but both *Chrysler* and *General Motors* involved an employer's petition for review. The latter two cases stated that the trial court should independently review the charges on the employer's unemployment insurance accounts.

Thus it is clear that the case law prior to *Bixby* has applied the independent judgment standard to review decisions of the Unemployment Insurance Appeals Board without regard to whether the petitioner is an employer or an employee and so an administrative award of benefits which erroneously makes a charge against the employer's account is a wrongful deprivation of property. *Bixby* did not expressly overrule nor disapprove of any of the prior decisions. Both the *Thomas*

and *General Motors* cases are cited with approval in *Bixby* (4 Cal.3d at p. 143, fns. 9, 10).

Respondents argue that *Bixby* added a new requirement, i.e., that the right be "fundamental" as well as "vested" before the independent judgment test applies. If by the use of the term "fundamental" the Supreme Court intended to restrict what "vested" right meant—in light of the prior decisions—it would be reasonable to expect that the court would have clearly and precisely set that forth for the benefit of future guidance. A more reasonable interpretation of the court's ruling appears to be that the Supreme Court intended to expand, not contract, the concept of vested rights. No indication is given that the *Bixby* decision restricted the test. (Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1977) § 5.70A, pp. 57-58.)

For a better understanding of *Bixby*, an examination of the factual situation presented to the court is imperative. In *Bixby* minority stockholders challenged the Corporation Commissioner's approval of a recapitalization plan designed to insure the continuity of ownership of a family-owned corporation. The minority attacked the plan, claiming its purpose was to benefit the majority stockholders. They also questioned its validity with respect to the values set for the new common and preferred stocks to be issued as creating future tax problems. After a full hearing, the Corporation Commissioner approved the plan as fair, just, and equitable. In a mandamus hearing the trial court found that the commissioner's findings and conclusions were supported by substantial evidence and did not constitute an abuse of discretion. The Supreme Court held that the trial court correctly applied the test of substantial review to the administrative decision because it did not involve any *important* or fundamental right and therefore did not call for an independent judicial review. (*Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 147.) In the same paragraph in which the court uses the term "important or fundamental right," the court continues: "The minority shareholders do not allege any deprivation of their right to a livelihood or a deprivation of their property." This sentence can only have reference to the pre-*Bixby* decisions wherein the case law ruled that with respect to an administrative ruling in those situations, the independent judgment test has to be applied on judicial review. (*Thomas* v. *California Emp. Stab. Com., supra,* 39 Cal.2d 501; *Chrysler Corp.* v. *California Emp. etc. Com., supra,* 116 Cal.App.2d 8; *General Motors Corp.* v. *Cal. Unemployment Ins. Appeals Bd., supra,* 253 Cal.App.2d 540.)

The court in *Bixby* found that an analysis of such a recapitalization plan involves such "technical knowledge as to matters of corporate structure, finance, taxation, and business judgment" that the trial court should not attempt to substitute "its judgment for the expertise of the commissioner." (*Bixby v. Pierno, supra,* 4 Cal.3d at p. 148.)

Moreover, *Bixby* did not involve a statutory scheme which set forth the rights and liabilities of parties affected by the legislation. The minority stockholders had no statutory right to any specific recapitalization or any reorganization plan. The minority shareholders in *Bixby* were asking the court to apply its own standard of fairness and equity in evaluating the plan as opposed to the fairness and equitable standards applied by the commissioner in the exercise of his discretion.

In elaboration of a "fundamental" right, the *Bixby* court emphasized the effect in "human terms and the importance of it to the individual in the life situation." (4 Cal.3d at p. 144.) Both this language and prior decisions tend to apply more readily to individuals than to corporations. Rights consistently have been deemed fundamental in such individual situations as professional licenses (e.g., *Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301 [196 P.2d 20]), but in other situations the case law is not so well defined. (See Cal. Administrative Mandamus (Cont.Ed.Bar 1966 and Supp. 1977) §§ 5.70 and 5.70A.) The court in *Bixby* itself noted that the decisions have shown "slighter sensitivity to the preservation of purely economic privileges." (*Id.,* at p. 145.)

That *Bixby* does not completely discount the economic aspect is also shown from the following language of the court: "In determining whether the right is fundamental the courts do not *alone* weigh the economic aspect of it, . . ." (4 Cal.3d at p. 144; italics added.) The opinion does not discuss the concept of a vested right in great detail,[3] but indicates that "in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is 'vested,' that is, already possessed by the individual," and then proceeds to point to the licensing

---

[3]"The courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review. (*Merrill v. Department of Motor Vehicles, supra,* 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33]; *Beverly Hills Fed. S. & L. Assn. v. Superior Court* (1968) 259 Cal.App.2d 306, 316. . . .)" (4 Cal.3d at p. 144.) Also, *Bixby* recognizes that the California rule sets no fixed formula and guarantees no predictably exact ruling in each case. (*Id.,* at p. 146.)

cases referred to earlier as examples of fundamental vested rights. (*Id.,* at p. 146.)

There is no dispute that *Bixby* set up a three-pronged test for determining when a decision requires independent review. Does the decision (1) substantially affect a (2) fundamental (3) vested right? No subsequent decision has narrowed the pre-*Bixby* scope of that right. In fact, subsequent decisions have broadened the scope of independent review by extending it to nonstate agencies. *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], extended independent review to local agencies, and a recent Supreme Court opinion, *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162], extended independent review to a private hospital. Neither case discussed the scope of the definition of "substantial effect on a vested fundamental right," in great detail, but it should be pointed out that the *Strumsky* case contains the following language which seems to indicate that an economic right is both fundamental and vested. It may also indicate that the *Bixby* court intended an expansion of rights instead of a restriction: "In *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, at pages 144-147, we explained the considerations which counsel in favor of *fuller judicial review in cases involving vested, fundamental* rights. The essence to be distilled is this: When an administrative decision affects a right which has been legitimately acquired or is otherwise '*vested,*' *and when that right is of a fundamental nature from the standpoint of its economic aspect or* its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated because '[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' " (*Strumsky, supra,* at p. 34; italics added.) In reversing and remanding the cause to the trial court to apply the independent judgment test the Supreme Court recognized that the appellant widow had a fundamental vested right to receive a service-connected death allowance on the death of her husband. The court speaks as follows at page 45: "We also believe that the right here in question is not only vested but 'fundamental' within the meaning of *Bixby* v. *Pierno, supra.* 'In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.' (4 Cal.3d at p. 144.) It is the latter consideration which renders the instant right fundamental. Above and beyond the 'economic aspect' present in all pension cases, we have here a

situation in which the benefits sought might well mean to the officer's widow the difference between self-support and the necessity that she supplement pension income through employment or other means. Thus, the impact in human terms of the decision is manifest."[4]

Also, a recognized authority in the field has stated the *Bixby* decision may result in an expansion of the concept of vested rights (though it is too early to tell). No indication is given that the decision restricted the test. (Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1977) § 5.70A, pp. 57-58.)

Post-*Bixby* decisions do not make any distinctions between the rights of appeal of employers and employees. The cases apply to employee appeals but contain language which applies to employer appeals as well. In *Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524, 527 [116 Cal.Rptr. 122], the appellate court stated that independent review of the evidence was required in review of Unemployment Insurance Appeals Board decisions. Several other post-*Bixby* decisions have also made no distinction in employer-employee rights. (*Young* v. *Unemployment Ins. Appeals Bd.* (1974) 37 Cal.App.3d 606, 609 [112 Cal.Rptr. 460]; *King* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 199, 203 [101 Cal.Rptr. 660]; and *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566]: "In reviewing decisions *granting* or *denying* unemployment insurance benefits, the superior court exercises its independent judgment on the evidence and inquires whether the administrative agency's findings are supported by the weight of the evidence" (italics added).)

Other post-*Bixby* cases have ruled that property rights are fundamental. In *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487], an action by land developers challenging a decision of the California Coastal Zone Conservation Commission which had denied an exemption from permit requirements

---

[4]Other cases illustrating an expansion of the doctrine of the *Bixby* case are:

*Harlow* v. *Carleson* (1976) 16 Cal.3d 731 [129 Cal.Rptr. 298, 548 P.2d 698], holding that the right to continued welfare payments, for purposes of judicial review of welfare decisions (State Department of Social Welfare) is both fundamental and vested, thereby invoking the independent judgment standard of review.

*Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745 [129 Cal.Rptr. 289, 548 P.2d 689], reversing the trial court (substantial evidence test applied), and holding that the retirement board's decision denying application for full salary disability benefits substantially affected a fundamental vested right requiring the trial court to exercise its independent judgment on the evidence.

for a land development, the appellate court held that the developers' property rights were fundamental, stating at page 844: "Here, respondents' asserted right is fundamental; it derives from the constitutional guarantee that property may not be taken without due process of law. [Citations.] The central question presented in this case is the extent of respondents' vested right. Consequently, the trial court must make its own independent judgment on the evidence." The court further noted that since the California Coastal Zone Conservation Commission is not an agency of· constitutional origin which has been granted limited judicial power by the Constitution, the trial court is authorized to make an independent ˉjudgment on the evidence only if the commission's decree " 'affects ·a right which has been legitimately acquired *or* is otherwise "vested," and . . . is of a fundamental nature from the standpoint of its ˉeconomic aspect *or* its "effect . . . in human terms and the importance . . . to the individual in the life situation," . . .' " (*Ibid;* italics added, citing *Strumsky* v. *San Diego County. Employees Retirement Assn., supra,* 11 Cal.3d at p. 34.)

See also *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163 [116 Cal.Rptr. 160], where the court characterized the right of a corporation to recover taxes paid under protest as a "fundamental right." In that case the court applied the substantial evidence test in reversing the decision of a county assessment board since the administrative agency involved *was of constitutional origin* with quasi-judicial power whose determinations are " 'entitled to the deference and respect due a judicial decision.' " (*Id.,* at p. 176.) And in *Perea* v. *Fales* (1974) 39, Cal.App.3d 939 [114 Cal.Rptr. 808], the Court of Appeal identified the petitioner's interest in public employment as a fundamental vested *property* right, reversed the trial court which had sustained his suspension by the city's personnel board and remanded the matter to the trial court to apply the independent judgment test to the record of the administrative agency's hearing.

▆ The respondents, on the contrary, assert that subsequent case law has distinguished an employer's rights from an employee's. They rely on *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14 [112 Cal.Rptr. 872] which states at page 23 that a hospital's right to establish employment procedures is not a fundamental vested right. That case is a challenge of the authority to be regulated. It does not affect an economic right of the hospital. (See also *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293 [130 Cal.Rptr. 814].) The substantial

evidence test was applied to a challenge of the vapor recovery systems regulations applicable to gas pumps. In this case, the appellants are not challenging an industry-wide regulation, but a specific Unemployment Insurance Appeals Board decision. Thus, the *Inyo* case is not nearly so persuasive as subsequent cases dealing with board decisions. The respondents also rely on *Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149 [129 Cal.Rptr. 743]. The Sierra Club asserted it had a fundamental vested right because Half Moon Bay Properties was asserting such a right. The court expressly rejected the argument, stating: "[A] party has no standing to assert that an independent judgment review rather than a substantial evidence review is required unless it possesses a fundamental vested right *on its own behalf* which was involved in an administrative agency's action." (*Id.,* at pp. 155-156; italics added.) A later decision further explained that such petitioners have no *vested* right in having property developed according to their own design. (*Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723 [135 Cal.Rptr. 588].)

Reliance on those decisions leads one back to *Bixby* to determine whether the employer possesses a fundamental vested right. As was stated earlier, an analysis of *Bixby* and subsequent decisions does not convincingly demonstrate that the court intended to restrict the concept. It is clear that prior to the *Bixby* decision trial courts applied the independent judgment test to decisions of the Unemployment Insurance Appeals Board. The independent judgment test has been applied both to employee appeals (see *Thomas* v. *California Emp. Stab. Com., supra,* 39 Cal.2d 501) and employer appeals (see *General Motors Corp.* v. *Cal. Unemployment Ins. Appeals Bd., supra,* 253 Cal.App.2d 540).

Our analysis of *Bixby* does not lead us to conclude that the Supreme Court intended to restrict the scope of trial court review guaranteed by such prior decisions. Further, nothing in the *Bixby* decision indicates that the scope of review should vary depending on the party who appeals the decision. Of particular interest is the recent case of *Hildebrand* v. *Unemployment Ins. Appeals Bd.* (1977) 19 Cal.3d 765 [140 Cal.Rptr. 151, 566 P.2d 1297] (rehg. den. 9/15/77) which upheld the Unemployment Insurance Appeals Board's denial of unemployment benefits even though the employee had claimed unconstitutional interference with freedom of religion. The defendant board denied plaintiff's application for unemployment benefits on the ground that she left her employment " 'voluntarily without good cause' " within the meaning of section 1256

of the Unemployment Insurance Code (plaintiff refused to work on Saturdays because she had to attend church). The plaintiff sought judicial review of the board's action through a petition for administrative mandamus (Code Civ. Proc., § 1094.5). The trial court independently reviewed the evidence and ordered the board to grant her application. The employer appealed and in reversing, the Supreme Court made the following reference to the employer's interest: "Plaintiff's employer, real party in interest Cel-A-Pak, Inc., appeals. (An employer, such as Cel-A-Pak, has a direct interest in the unemployment compensation benefits paid to former employees since such benefits are charged against the employer's account which is fed by the employer's contributions (§ 1026).)" (*Id.*, at p. 768.) That case squarely indicates that the nature of the employer's interest is virtually identical to the employee's.

■ Of further interest we observe that the trial court's conclusion would subject the entire field of administrative mandamus to even more uncertainty. Those decisions which had up to now applied the independent judgment test would all need to be reexamined. For these reasons we conclude that *Bixby* did not intend any restriction of pre-*Bixby* decisions which had applied the independent judgment test. The *Bixby* decision, on the other hand, expanded the scope of independent review to rights which can be characterized as substantially affecting a fundamental vested right.

Based on the facts of the instant case, the trial court should have independently reviewed the board's determination.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Racanelli, P. J., and Elkington, J., concurred.

The petition of the defendants and respondents for a hearing by the Supreme Court was denied May 11, 1978. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.